United States Court of Appeals
Fifth Circuit

**F I L E D**

February 12, 2007

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 06-40292

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

VERSUS

SANTIAGO DOMINGUEZ,

Defendant - Appellant.

Appeal from the United States District Court
for the Southern District of Texas, McAllen
7:05-CR-767

Before DAVIS and STEWART, Circuit Judges, and CRONE, District Judge.[1]

W. EUGENE DAVIS, Circuit Judge:

Santiago Dominguez appeals his sentence after his conviction for being illegally present in the United States following a prior deportation. The principal issue presented for decision is whether the district court erred by increasing the defendant's offense level pursuant to U.S.S.G. § 2L1.2(b)(1)(A) based on a finding that his earlier Florida conviction for aggravated battery was a crime of violence. Finding no error, we affirm.

I.

Dominguez was charged by indictment with being illegally

[1] District Judge for the Eastern District of Texas, sitting by designation.

1

present in the United States following a prior deportation, in violation of 8 U.S.C. § 1326. Dominguez pleaded guilty in exchange for a Government recommendation of a two-level reduction for acceptance of responsibility.

The presentence report (PSR) assigned Dominguez a base offense level of eight. U.S.S.G. § 2L1.2(a). The PSR recommended that Dominguez's offense level be increased 16 levels because his deportation occurred after his conviction of a crime of violence (COV). The PSR also recommended a two-level reduction for acceptance of responsibility. Dominguez's total offense level of 22, combined with his criminal history category of II, yielded a recommended guidelines range of 46-57 months in prison.

Dominguez filed objections to the PSR challenging the 16-level enhancement under § 2L1.2(b)(1)(A)(ii), requesting the third level for acceptance of responsibility, and asserting that any sentence over two years in prison would violate Apprendi v. New Jersey, 530 U.S. 466 (2000). The district court overruled Dominguez's Apprendi objection and his challenge to the 16-level enhancement. The court granted Dominguez the third level for acceptance of responsibility and a two-level reduction for early disposition, resulting in a total offense level of 19 and a guidelines range of 33-41 months in prison. The district court sentenced Dominguez to 33 months in prison, to be followed by a

2

two-year term of supervised release.  Dominguez filed a timely notice of appeal.

II.

Dominguez argues that the district court erred in imposing the 16-level enhancement because his Florida conviction did not constitute a COV.  This court reviews *de novo* the district court's interpretation of the Sentencing Guidelines.  <u>United States v. Sarmiento-Funes</u>, 374 F.3d 336, 338 (5th Cir. 2004).  Section 2L1.2(b)(1)(A)(ii) provides for a 16-level increase when a defendant was previously deported after a conviction for a COV.  A COV, as defined in the commentary, includes various enumerated offenses, including "aggravated assault," and also includes "any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another."  § 2L1.2, comment. (n.1(B)(iii)).  Thus, Dominguez's prior conviction qualifies as a COV if it meets either definition.  We need not consider whether his conviction qualifies as the enumerated offense of aggravated assault, because we conclude that the offense "has as an element the use, attempted use, or threatened use of physical force against the person of another."  § 2L1.2, comment. (n.1(B)(iii)).

The Florida aggravated battery statute makes it a second-degree felony for any individual "who, in committing battery: 1. Intentionally or knowingly causes great bodily harm, permanent

3

disability, or permanent disfigurement; or 2. Uses a deadly weapon." FLA. STAT. ANN. § 784.045(1)(a) (1998). An individual commits a battery by (1) "[a]ctually and intentionally touch[ing] or strik[ing] another person against the will of the other" or by (2) "[i]ntentionally caus[ing] bodily harm to another person." FLA. STAT. ANN. § 784.03(1)(a) (1998). The charging instrument in Dominguez's case alleged that on a certain date, Dominguez (named in the information as Francisco Zuniga)[2] "did unlawfully and intentionally touch or strike Omar Acosta against his will with a deadly weapon, to-wit: a knife." The charging document tracks the language of §§ 784.03(1)(a)(1) and 784.045(1)(a)(2). The district court found that based on the charging information and the statutes, Dominguez had committed an intentional offense that qualified as a COV.

This court employs a categorical approach in determining whether an offense qualifies as a COV under § 2L1.2. See United States v. Chapa-Garza, 243 F.3d 921, 924 (5th Cir. 2001) (addressing enhancement for prior aggravated-felony conviction). We examine the elements of the offense, rather than the facts underlying the conviction or the defendant's actual conduct, to determine whether an offense meets the definition of a COV. United States v. Calderon-Pena, 383 F.3d 254, 257-58 (5th Cir.

_____

[2] The parties do not dispute that Dominguez is the same individual as that named in the state court information.

4

2004)(en banc), <u>cert. denied</u>, 543 U.S. 1076 (2005).  If the statute of conviction contains a series of disjunctive elements, "a court may look to the indictment or jury instructions, <u>for the limited purpose</u> of determining which of a series of disjunctive elements a defendant's conviction satisfies."  <u>Id.</u> at 258 (internal quotation marks and citation omitted).

As noted above, Dominguez's indictment alleged that he "intentionally touch[ed] or str[uck] [the victim] against his will with a deadly weapon."  Thus, the elements of the offense committed by Dominguez are that he intentionally (1) touched or struck the victim (2) with a deadly weapon (3) against the victim's will.  <u>Id.</u>; §§ 784.03(1)(a)(1), 784.045(1)(a)(2).

As Dominguez notes, the Florida offense does not require the use or attempted use of force.  This court has defined the "force" necessary to make an offense a COV as "'synonymous with destructive or violent force.'"  <u>United States v. Landeros-Gonzales</u>, 262 F.3d 424, 426 (5th Cir. 2001) (citation omitted). Under the subsection with which Dominguez was charged, an individual could commit an aggravated battery by merely touching someone with a deadly weapon, without any resulting physical injury, and this does not qualify as a use of force.  <u>See</u> <u>United States v. Sanchez-Torres</u>, 136 F. App'x 644, 647-48 (5th Cir. 2005)(Washington fourth-degree assault statute does not qualify as COV because it could be committed by an "offensive touching");

5

Rodriquez v. State, 263 So. 2d 267, 268 (Fla. Dist. Ct. App. 1972)(defining aggravated battery as including an offensive touching).

However, the touching of an individual with a deadly weapon creates a sufficient threat of force to qualify as a crime of violence. Dominguez asserts that aggravated battery with a deadly weapon does not include a threatened use of force because the Florida statute does not include the word "force" or require the use of physical force. This argument is misguided. Under the elements test, the Government must prove that the offense has as an element "the use, attempted use, or threatened use of physical force" against the person of another. § 2L1.2, comment. (n.1(B)(iii)). The fact that the statute does not include as an element the actual use of force does not preclude a conclusion that the offense is a COV; the threatened use of force is sufficient. Moreover, the absence of the word "force" is not relevant; Dominguez fails to point to any case law in which this court has viewed the presence or absence of this word in a statute as dispositive.

This court has not addressed the precise question whether an offense such as the one committed by Dominguez includes as an element a threatened use of force if it is performed with a deadly weapon. The court has held that the Texas offense of deadly conduct, which required the firing of a weapon in the

6

direction of an individual, has as an element the threatened use of force against the person of another.  United States v. Hernandez-Rodriquez, ___ F.3d ___, 2006 WL 2861123, at *2-*3 (5th Cir. Oct. 9, 2006)(No. 05-51429).

This court also considered an Illinois aggravated-battery statute, which required in relevant part that the defendant "intentionally or knowingly causes great bodily harm, or permanent disability or disfigurement" through the use of a deadly weapon.  United States v. Velasco, ___ F.3d ___, 2006 WL 2729670, at *3 (5th Cir. Sept. 26, 2006)(No. 05-10451).  This court held that such an offense constituted a COV because the defendant necessarily used a deadly weapon against another.  Id. at *4.  The court distinguished between mere firearm-possession cases, noting that a use of the weapon was necessary to create a COV and that "[i]n order to 'use' a weapon to cause bodily harm, one must, at the very least, threaten the use of physical force." Velasco, 2006 WL 2729670, at *4; see United States v. Medina-Anicacio, 325 F.3d 638, 644 (5th Cir. 2003)(simple possession of a deadly weapon not COV).  Velasco is, of course, distinguishable; the Florida statute in question does not require any injury to result from the intentional striking or touching with a deadly weapon.

In United States v. Treto-Martinez, 421 F.3d 1156, 1157 (10th Cir. 2005), cert. denied, 126 S. Ct. 1089 (2006), the

7

defendant had a prior Kansas conviction for aggravated battery against a law enforcement officer.  Under state law, the offense of aggravated battery could be generally committed either by intentionally causing bodily harm to another person with a deadly weapon or by intentionally causing physical contact with another person "in a rude, insulting or angry manner with a deadly weapon."  Id. at 1158; KAN. STAT. ANN. § 21-3414(a)(1)(B), (a)(1)(C).  The charging documents did not specify the subsection being charged, and Treto-Martinez argued that physical contact in a rude, insulting, or angry manner did not constitute a use of force.  Treto-Martinez, 421 F.3d at 1159.  The Tenth Circuit disagreed, concluding that

> a person who touches a police officer with a deadly weapon in "a rude, insulting or angry manner," has at the very least "threatened use of physical force" for purposes of § 2L1.2(b)(1)(A). Even if the physical contact does not produce bodily injury, the manner in which the physical contact with a deadly weapon must occur to violate the Kansas statute clearly has as an element the "threatened use of physical force." Causing physical contact with a deadly weapon in "a rude, insulting or angry manner," if not sufficient in itself to constitute actual use of physical force under § 2L1.2(b)(1)(A), could always lead to more substantial and violent contact, and thus it would always include as an element the "threatened use of physical force." Physical contact with a deadly weapon under this statute will always constitute either actual or threatened use of physical force.

Treto-Martinez, 421 F.3d at 1160.

Although Dominguez's state conviction did not involve a police officer or a crime that requires that the contact occur in

8

a rude, insulting or angry manner, the analysis is the same. Although an intentional touching with a deadly weapon under Florida law may not in itself cause injury, it could lead to more violent contact, or could at least put the victim on notice of the possibility that the weapon will be used more harshly in the future, thereby constituting a threatened use of force. See also United States v. Lerma, 158 F. App'x 3, 4 (9th Cir. 2005)(placing an individual in a "reasonable apprehension of imminent physical injury" with a deadly weapon is COV); United States v. Drummond, 240 F.3d 1333, 1337 (11th Cir. 2001)(New York crime of menacing required intentionally placing another in fear of death or physical injury through the use of a deadly weapon and constituted a COV); cf. United States v. Perez-Vargas, 414 F.3d 1282, 1285-86 (10th Cir. 2005)(no COV in statute prohibiting, among other behaviors, criminal negligence causing bodily injury with a deadly weapon).

Under the rationale of Treto-Martinez, then, we hold that Dominguez's conviction for aggravated battery under the specific subsection of Florida law qualifies as a COV because it has as an element at least a threatened use of force.

III.

Dominguez contends that the 33-month term of imprisonment imposed in his case exceeds the statutory maximum sentence allowed for the § 1326(a) offense charged in his indictment. He

9

challenges the constitutionality of § 1326(b)'s treatment of prior felony and aggravated felony convictions as sentencing factors rather than elements of the offense that must be found by a jury in light of Apprendi.

Dominguez's argument is foreclosed by Almendarez-Torres v. United States, 523 U.S. 224, 235 (1998), in which the Supreme Court held that treatment of prior convictions as sentencing factors in § 1326(b)(1) and (2) was constitutional. Although Dominguez contends that a majority of the Supreme Court would now consider Almendarez-Torres to be incorrectly decided in light of Apprendi,, "[t]his court has repeatedly rejected arguments like the one made by [Dominguez] and has held that Almendarez-Torres remains binding despite Apprendi." United States v. Garza-Lopez, 410 F.3d 268, 276 (5th Cir.), cert. denied, 126 S. Ct. 298 (2005). Dominguez concedes as much, but he raises the argument to preserve it for further review.

IV.

For the foregoing reasons, Dominguez's sentence is AFFIRMED. AFFIRMED.

10