# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-40095

United States Court of Appeals
Fifth Circuit

**FILED**

December 19, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

OSCAR CECILIO RAMOS CERON,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before KING, JOLLY, and COSTA, Circuit Judges.

PER CURIAM:

Oscar Cecilio Ramos Ceron pleaded guilty to reentry of a deported alien. The district court applied a 16-level Sentencing Guidelines enhancement, categorizing his prior Florida conviction of aggravated battery as a "crime of violence." Ramos Ceron appeals, arguing that Florida aggravated battery is not a crime of violence, and that collateral estoppel should have precluded the government from asserting the crime of violence enhancement because a judge presiding over his earlier reentry case declined to apply it.

## I.

The calculation of Ramos Ceron's offense level in his presentence report (PSR) included a 16-level crime of violence enhancement under U.S.S.G.

No. 13-40095

§ 2L1.2(b)(1)(A)(ii), based on his 2008 Florida conviction of aggravated battery under Fla. Stat. § 784.045(1)(a)(1).  Ramos Ceron's charging document for the Florida conviction stated that he committed

> an aggravated battery upon Jorge Alfredo Talavera by actually and intentionally touching or striking the person of Jorge Alfredo Talavera, against said person's will, by touching Jorge Alfredo Talavera about the face and/or back and/or body, and did thereby knowingly or intentionally cause great bodily harm and/or permanent disfigurement, to wit: lacerations requiring stitches, in violation of s. 784.045(1)(a)1, Fla. Stat.

Based on a resulting offense level of 22 and a criminal history category of III, Ramos Ceron's Guidelines range was 51 to 63 months.  Ramos Ceron objected to the enhancement, arguing that his Florida aggravated battery conviction did not qualify as a crime of violence.  A footnote in the objection he filed noted that a different judge presiding over his earlier illegal reentry case had granted this objection and instead applied only the 4-level enhancement for "any felony."

In this case, however, the district court overruled the objection to the crime of violence enhancement, adopted the PSR, and imposed a 63-month sentence at the high end of the Guidelines range.  The district court also stated that in the absence of the crime of violence enhancement it would have imposed the same sentence by applying an upward variance.

Ramos Ceron appeals, arguing that the crime of violence enhancement is not applicable, that the district court should have applied collateral estoppel, and that the error was not harmless despite the district court's alternative sentence.

## II.

We begin by addressing Ramos Ceron's argument that the district court erred by failing to apply collateral estoppel based on his prior illegal reentry case in which he successfully litigated against the application of the crime of

2

violence enhancement.  Collateral estoppel applies in criminal cases, but it is not raised often and we have observed that the "efficiency concerns that drive the collateral estoppel policy on the civil side are not nearly so important in criminal cases." *United States v. Mollier*, 853 F.2d 1169, 1176 (5th Cir. 1988) (citing *Standefer v. United States*, 447 U.S. 10, 25 (1980)).  Indeed, Ramos Ceron cites no case in which a defendant successfully invoked collateral estoppel to preclude application of a Sentencing Guidelines enhancement. There are at least a few appellate decisions involving failed attempts to raise collateral estoppel in which the doctrine's basic requirements were missing. *See United States v. Duarte-Aldana*, 364 F. App'x 360, 361–62 (9th Cir. 2010) (rejecting collateral estoppel argument because the enhancement "was not actually litigated"); *United States v. Rosquete*, 199 F. App'x 728, 730–31 (11th Cir. 2005) (rejecting collateral estoppel because the defendant did not show that the applicability of the enhancement had been "determined by a valid and final judgment"); *United States v. Grey*, No. 13-12333, slip op. at 11–13 (11th Cir. Mar. 12, 2014) (same).

Ramos Ceron did not raise the collateral estoppel argument below.  The sentencing objection he filed did not cite the doctrine or otherwise contend that the prior ruling had preclusive effect; it merely pointed out the ruling in a footnote and noted that there had been no "change in the existing jurisprudence since then."  Nor did Ramos Ceron invoke collateral estoppel at the sentencing hearing, during which no one even mentioned the ruling in the prior case.  Even if the district court could have construed the footnote as a collateral estoppel argument, there was nothing in the record that revealed the arguments or holding in the prior case besides a citation to its case number.

Issues like this one not adequately raised in the district court are reviewed for plain error on appeal; an appellant must show a forfeited error that is clear or obvious and that affects his substantial rights.  *See Puckett v.*

No. 13-40095

*United States*, 556 U.S. 129, 135 (2009). Even when that standard is satisfied, we have discretion to correct the error only if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* (alteration in original).

Ramos Ceron is unable to show that the district court's failure to apply collateral estoppel is reversible plain error. "The defendant bears the burden of demonstrating that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding." *United States v. El-Mezain*, 664 F.3d 467, 552 (5th Cir. 2011) (internal quotation marks omitted). The record before the district court on this issue did not satisfy that burden.

At oral argument, Ramos Ceron's counsel argued that, on appeal, we should take judicial notice of sealed docket entries in the prior case, which would reveal the written objection Ramos Ceron filed and the district court's statement of reasons showing that the court did not apply the enhancement. Even then, because the docket does not contain a transcript of the sentencing hearing, we would not know the exact reasoning used by the district court in the earlier case. *See United States v. Giarratano*, 622 F.2d 153, 156 & n.4 (5th Cir. 1980) (holding that a criminal defendant who failed to provide transcripts could not show that a prior trial "necessarily decided" the issue in a subsequent case, and thus failed to carry his burden on collateral estoppel).

But more fundamentally, we review for plain error based on the record before the district court. *See United States v. Montano*, 505 F. App'x 299, 300 (5th Cir. 2013), *cert. denied*, 133 S. Ct. 2367 (2013) (evaluating plain error "on the limited record before the district court"); *United States v. Troyer*, 677 F.3d 356, 358–59 (8th Cir. 2012) ("[T]he error must be clear on the record in the district court."); *United States v. Brown*, 526 F.3d 691, 707 (11th Cir. 2008), *vacated on other grounds by* 556 U.S. 1150 (2009) (noting that the use of "inherent equitable powers . . . to supplement the record with information not

4

reviewed by the district [court] . . . is entirely inappropriate in reviewing a case for plain error" and that "[i]n conducting plain error review, we examine the record *before the district court* for error that is 'clear or obvious'" (emphasis and alterations in original)).   Although we may correct errors not raised below when they are obvious from the record and meet the other plain error criteria, it is quite different to allow the creation of a new record on appeal to support an argument that was not raised below.  The record that was before the district court on this issue—only the footnote referring to the ruling in the prior case— would not have indicated a number of things that might be relevant to the estoppel analysis, such as whether the district court in the prior case had a copy of the charging instrument from Ramos Ceron's Florida offense.   The district court therefore did not plainly err because the record before it did not support giving collateral estoppel effect to Ramos Ceron's prior sentencing.  *See Rosquete*, 199 F. App'x at 731 (holding that a district court did not err in failing to apply collateral estoppel when the defendant did not show that the non-applicability of a Guidelines enhancement had "been determined by a valid and final judgment" in a prior proceeding).

Furthermore, as mentioned above, Ramos Ceron is unable to cite any authority giving preclusive effect to a prior Sentencing Guidelines ruling. When the case law is unsettled, we cannot say that any error is clear or obvious.  *See United States v. Trejo*, 610 F.3d 308, 319 (5th Cir. 2010) (holding that a claim that is "novel" and "not entirely clear under the existing case authority" is "doom[ed] . . . for plain error").  With an inadequate district court record on which to evaluate collateral estoppel, as well as the absence of case law unequivocally supporting its application in this context, Ramos Ceron cannot demonstrate that any district court error was clear or obvious.

No. 13-40095

## III.

We therefore turn to the merits of applying the crime of violence enhancement to Ramos Ceron's conviction of Florida aggravated battery. The Guidelines state that the offense level for unlawfully reentering the United States shall be increased 16 levels if the defendant has a prior conviction for a crime of violence and the prior conviction receives criminal history points. U.S.S.G. § 2L1.2(b)(1)(A)(ii). The commentary to the Guidelines defines a crime of violence as a number of enumerated offenses "or any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 2L1.2, cmt. n.1(B)(iii). Ramos Ceron contends that his Florida aggravated battery conviction qualifies as neither an enumerated offense[1] nor one that has as an element "the use of physical force." We need consider only the latter catch-all provision because the charging document shows that Ramos Ceron was convicted under elements of Florida aggravated battery that combine to require the "use of physical force against the person of another."

Courts employ a categorical approach when classifying a prior conviction for sentencing enhancement purposes. *See Taylor v. United States*, 495 U.S. 575, 602 (1990). Under this approach, "the analysis is grounded in the elements of the statute of conviction rather than a defendant's specific conduct." *United States v. Rodriguez*, 711 F.3d 541, 549 (5th Cir. 2013) (en banc). An enhancement is therefore justified under the use of force prong of the crime of violence definition only if the crime "necessarily requires a finding that the defendant used, attempted to use, or threatened to use physical force

---

[1] On this issue, which we do not reach, Ramos Ceron argues that Florida aggravated battery criminalizes a wider range of behavior than the generic crime of aggravated assault, which is an enumerated offense under the definition of a crime of violence. This is the case, he contends, because the Florida statute's requirement of "great bodily harm" is a lower bar than generic aggravated assault's requirement of "serious bodily injury."

6

against the person of another." *United States v. Herrera-Alvarez*, 753 F.3d 132, 134 (5th Cir. 2014). "[P]hysical force in the context of defining a crime of violence for the purposes of construing the Sentencing Guidelines requires force capable of causing physical pain or injury to another person." *United States v. Flores-Gallo*, 625 F.3d 819, 823 (5th Cir. 2010) (internal quotation marks omitted).

If "a statute contains multiple, disjunctive subsections," we apply a modified categorical approach. *See United States v. Sanchez-Espinal*, 762 F.3d 425, 429 (5th Cir. 2014). Under this approach, we "look beyond the statute to certain conclusive records made or used in adjudicating guilt in order to determine which particular statutory alternative applies to the defendant's conviction," and apply the categorical approach to that version of the crime. *Id.* (quoting *United States v. Bonilla-Mungia*, 422 F.3d 316, 320 (5th Cir. 2005)). A court may review "the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented" in order to determine under which elements the defendant was charged. *See United States v. Elizondo-Hernandez*, 755 F.3d 779, 781 (5th Cir. 2014) (quoting *Shepard v. United States*, 544 U.S. 13, 16 (2005)). The Supreme Court emphasized in *Descamps v. United States* that a criminal statute must be divisible—that is, the statute must "comprise[] multiple, alternative versions of the crime"—in order for the modified categorical approach to apply. 133 S. Ct. 2276, 2283–84 (2013).

The Florida aggravated battery statute under which Ramos Ceron pleaded guilty states:

A person commits aggravated battery who, in committing battery:

    1.    Intentionally or knowingly causes great bodily harm, permanent disability, or permanent disfigurement; or

2.    Uses a deadly weapon

Fla. Stat. Ann. § 784.045(1)(a).  The referenced offense of simple battery is defined in a separate provision:

> The offense of battery occurs when a person:
>
> 1.    Actually and intentionally touches or strikes another person against the will of the other; or
>
> 2.    Intentionally causes bodily harm to another person.

Fla. Stat. Ann. § 784.03(1)(a).

To determine the conduct necessarily involved in Ramos Ceron's Florida offense, we must therefore be able to narrow his crime down to a particular element of both the simple battery and aggravated battery statutes.  A recent decision helps this inquiry, because we held that in defining the elements of a crime for the purposes of applying the modified categorical approach, "laws and regulations" cross-referenced by the charged statute "can also be the subject of the modified categorical approach." *See Franco-Casasola v. Holder*, --- F.3d ----, 2014 WL 5454842, at *3 (5th Cir. Oct. 23, 2014).  This accords with our sister circuits' interpretations of *Descamps*.  *See United States v. Trent*, 767 F.3d 1046, 1055 (10th Cir. 2014); *Coronado v. Holder*, 759 F.3d 977, 985 (9th Cir. 2014); *United States v. Denson*, 728 F.3d 603, 608 (6th Cir. 2013).  And in *United States v. Dominguez*, a pre-*Descamps* opinion, we took that same approach to the Florida aggravated battery statute at issue here.  *See* 479 F.3d 345, 347–48 (5th Cir. 2007) (using the disjunctive elements of simple battery to apply the modified categorical approach to the defendant's conviction of Florida aggravated battery).  Florida aggravated battery is therefore divisible based on the elements of the underlying offense of simple battery.  Because the aggravated battery offense requires that the accused also be guilty of simple battery, and because both the aggravated battery and simple battery statutes have two enumerated "disjunctive subsections," *Sanchez-Espinal*, 762 F.3d at

429, there are "multiple, alternative versions of the crime" of Florida aggravated battery. *See Descamps*, 133 S. Ct. at 2284.

The Florida charging document identifies under which of these alternative elements Ramos Ceron was charged. It states that he "actually and intentionally touch[ed] or str[uck]" the victim against his will. In terms of the underlying simple battery offense, he was therefore guilty of violating Fla. Stat. Ann. § 784.03(1)(a)(1), which prohibits "[a]ctually and intentionally touch[ing] or strik[ing] another person against the will of the other." That battery offense was aggravated pursuant to Fla. Stat. Ann. § 784.045(1)(a)(1)— the "great bodily harm" version, rather than the "deadly weapon" version, of aggravated battery.

It may be that neither of these two elements—intentional touching and causing great bodily harm—would, standing alone, necessarily involve the use of force. The Supreme Court has held, interpreting the same simple battery statute that underlies Ramos Ceron's aggravated battery conviction, that touching another person is not, by itself, the "use of force." *See Johnson v. United States*, 559 U.S. 133, 138 (2010). And in *United States v. Villegas-Hernandez*, we held that a Texas assault statute that criminalized causing "bodily injury" could be committed in ways that do not necessarily involve the use of force. 468 F.3d 874, 879 (5th Cir. 2006).

But because it involved both of these elements, Ramos Ceron's conviction necessarily required the use of force. *See United States v. Dominguez*, 479 F.3d 345, 348 (5th Cir. 2007) (combining the "intentional touching" element with the "deadly weapon" element to conclude that the two together "create[] a sufficient threat of force to qualify as a crime of violence"). Touching or striking that causes great bodily harm is a paradigmatic example of the use of force. We have held, for example, that a statute criminalizing "unlawful touching . . . done with the intention of bringing about a harmful or offensive contact or

apprehension thereof" requires the use of force. *See United States v. Basulto-Reina*, 421 F. App'x 349, 352 (5th Cir. 2011). Similarly, the Eleventh Circuit has held that Florida felony battery, which involves the same elements as Ramos Ceron's conviction for aggravated battery (intentional touching and great bodily harm), qualifies as a violent felony under the Armed Career Criminal Act "because the statute requires that the defendant intentionally touch or strike the victim with sufficient force to cause the requisite level of harm." *See United States v. Smith*, 448 F. App'x 936, 940 (11th Cir. 2011); *see also United States v. Lawrence*, 627 F.3d 1281, 1286 (9th Cir. 2010) (noting that while "'unlawful touching' would not on its own qualify [Washington's second degree assault statute] as a categorical violent felony," the additional element of "substantial bodily harm" "require[s] force that . . . is violent in nature").

Ramos Ceron counters this by suggesting that a person could be found guilty of aggravated battery by virtue of tapping a victim on the shoulder and causing him to fall down and suffer great bodily harm. Although this is a clever hypothetical, it is the type of argument the Supreme Court has instructed us to avoid crediting. The categorical approach requires "more than the application of legal imagination to a state statute's language." *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007). Instead,

> [i]t requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime. To show that realistic probability, an offender, of course, may show that the statute was so applied in his own case. But he must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues.

*Id.*; *see also United States v. Basulto-Reina*, 421 F. App'x 349, 352 (5th Cir. 2011) (applying this reasoning from *Duenas-Alvarez* to the use of force prong of the crime of violence definition); *United States v. Laurico-Yeno*, 590 F.3d

818, 822 (9th Cir. 2010) (same).  With no showing that Florida courts actually apply the aggravated battery statute to this far-fetched and hypothetical conduct, we cannot say that the district court erred by applying the crime of violence enhancement.

We therefore AFFIRM the district court's sentence.