In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 17-3657

STACY M. HAYNES,

*Petitioner-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Respondent-Appellee.*

---

Appeal from the United States District Court for the
Central District of Illinois.
Nos. 16-4106, 4:96-CR-40034-JBM-1 — **Joe Billy McDade**, *Judge.*

---

ARGUED JULY 6, 2018 — DECIDED AUGUST 29, 2019

---

Before SYKES, HAMILTON, and BRENNAN, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Petitioner-appellant Stacy
Haynes challenges three of his convictions under 18 U.S.C.
§ 924(c), which imposes steep penalties on a defendant who
uses a firearm during a "crime of violence." Those convictions
are based on Haynes' three convictions under 18 U.S.C.
§ 1952(a)(2), which required proof, among other things, that
he committed or attempted to commit a "crime of violence."
The crimes of violence that form the basis of Haynes'

§ 1952(a)(2) convictions were three armed robberies in viola-
tion of the Hobbs Act, 18 U.S.C. § 1951, which is a crime of
violence for purposes of § 924(c). *United States v. Fox*, 878 F.3d
574, 579 (7th Cir. 2017).

The issue in this appeal is whether the different crimes in
this nested set of charges—§ 1951 nested inside § 1952(a)(2)
nested inside § 924(c)—can support the § 924(c) convictions.
The district court upheld Haynes' § 924(c) convictions be-
cause the indictment and jury instructions, taken together, re-
quired jurors to find each element of the Hobbs Act rob-
beries—crimes of violence—at the center of the nested charg-
ing scheme. *Haynes v. United States*, 237 F. Supp. 3d 816 (C.D.
Ill. 2017). Haynes appeals, arguing both that § 1952(a)(2) is not
"divisible" and that the jury did not necessarily find him
guilty of the underlying Hobbs Act robberies. We agree with
the district court and affirm its judgment.

I.   *Factual and Procedural Background*

In *Samuel Johnson v. United States*, 135 S. Ct. 2551 (2016), the
Supreme Court held that the "residual clause" in the defini-
tion of "violent felony" under the Armed Career Criminal
Act, 18 U.S.C. § 924(e)(2)(B), was unconstitutionally vague.
Earlier, in *Taylor v. United States*, 495 U.S. 575 (1990), the Court
adopted the so-called "categorical method" to determine
whether prior convictions could serve as predicate offenses
under the Armed Career Criminal Act. In the wake of *Johnson*,
federal courts have been applying the Court's reasoning and
methods to a kaleidoscopic variety of individual cases—ap-
plying similar statutory and Sentencing Guideline definitions
of violent crimes to predicate convictions under a host of fed-
eral and state offenses arising in a wide variety of procedural
postures.

This appeal presents a particularly intricate variation on the *Johnson* and *Taylor* themes. This case began with a one-man crime wave in early 1996. In just a few weeks, Haynes robbed six stores at gunpoint in the Quad Cities region. Three robberies were in Illinois and three were in Iowa, which affected the government's charging decisions and set the stage for the legal issues we address here.

The indictment charged Haynes with the three Illinois robberies as Hobbs Act robberies under 18 U.S.C. § 1951. For each of those robberies, Haynes also was charged with a corresponding count under § 924(c) for using and carrying a firearm during and in relation to a crime of violence. Those Illinois Hobbs Act robberies and the three accompanying § 924(c) convictions are not challenged in this appeal.

The complications come from the Iowa robberies, which were charged in an Illinois venue as three counts under § 1952(a)(2), which in relevant part makes it a crime to travel in interstate commerce with the intent to commit a crime of violence and then to attempt or carry out a crime of violence. The indictment alleged that Haynes accomplished each violation of § 1952 "by committing the offense of robbery" as defined in § 1951. Each of those § 1952 counts was also accompanied by a separate § 924(c) firearm charge.

A jury convicted Haynes on all twelve counts. He was sentenced originally to life in prison for each robbery based on 18 U.S.C. § 3559(c)(1) because he had two prior Illinois state burglary convictions that were treated as prior "serious violent felonies." In this collateral challenge, the six mandatory life sentences were set aside in the district court because, after *Johnson*, Haynes' burglary convictions could not be used under § 3559(c)(1). The government does not dispute that point.

Victory on the challenge to the mandatory life sentences has not produced meaningful relief, however, since Haynes was resentenced to a total of 105 years in prison—the statutory minimum for his six § 924(c) convictions. If Haynes could prevail on his challenge to the three § 924(c) convictions premised on the § 1952 convictions, he would still face a minimum of 45 years on resentencing—but that could offer at least some possibility that he might complete his sentence before he dies.[1]

II.  *Analysis*

Haynes argues that his convictions under § 1952(a)(2) cannot qualify as "crimes of violence" sufficient to support the three associated § 924(c) convictions. The legal landscape has changed significantly since Haynes committed his six robberies in 1996 and even since this appeal was argued. The "residual clauses" of the statutory definitions of "crime of violence" relevant to this case were held invalid in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018) (18 U.S.C. § 16), and *United States v. Davis*, 139 S. Ct. 2319 (2019) (18 U.S.C. § 924(c)). The upshot of *Davis* and *Dimaya* is that Haynes' three § 924(c) convictions based on interstate travel for the Iowa robberies can stand only if his three convictions under § 1952(a)(2)(B) have "as an

---

[1] The district court granted Haynes a certificate of appealability authorizing him to challenge the decision to leave intact the § 924(c) convictions. Haynes appealed, and the district court stayed resentencing until the conclusion of the appeal. We dismissed that appeal, however, because the district court's judgment was not final until Haynes was resentenced on all counts of conviction. *Haynes v. United States*, 873 F.3d 954 (7th Cir. 2017). Haynes then was resentenced. With a final judgment in hand, Haynes has appealed again.

element the use, attempted use, or threatened use of physical force." 18 U.S.C. §§ 16(a), 924(c)(3)(A).

We address the challenged § 924(c) convictions in two steps. First, we address whether § 1952 is "divisible" such that a court may use the modified categorical approach to look through a conviction under § 1952(a)(2)(B) and rely on the elements of the underlying "crime of violence." We find that § 1952(a)(2)(B) incorporates the elements of the underlying "crime of violence" and therefore is divisible. Second, we consider the specific course of Haynes' prosecution and whether his three convictions under § 1952(a)(2)(B) can support their associated § 924(c) convictions. We conclude that they can, after considering the indictment, jury instructions, and verdicts.

A.  *Divisibility of 18 U.S.C. § 1952(a)(2)(B)*

We review *de novo* the district court's decision that Haynes' § 1952 convictions qualify as crimes of violence under the "elements clause" in § 924(c)(3)(A). See *United States v. Williams*, 864 F.3d 826, 828 (7th Cir. 2017). That inquiry depends on the statutory elements of each offense, not the actual facts underlying the particular convictions. See *Descamps v. United States*, 570 U.S. 254, 260–61 (2013), citing *Taylor*, 495 U.S. 575; *Williams*, 864 F.3d at 828. When a predicate statute lays out one set of elements defining a single offense, the court applies the categorial method by looking at the elements of the predicate offense to see if they include "the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A); see *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016); *United States v. Cardena*, 842 F.3d 959, 995–99 (7th Cir. 2016).

Many criminal statutes include multiple, distinct crimes, each with its own distinct set of elements. Many criminal statutes also list different "means" of satisfying particular elements. Statutes that list alternative "elements" are "divisible" into multiple crimes; provisions that list alternative "means" are not. See *Mathis*, 136 S. Ct. at 2249. Some statutes combine both multiple crimes and alternative means of committing those particular crimes.

The distinction between elements and means can be slippery. Yet the legal consequences of the choice can be dramatic, whether by calling for a more severe sentence, permitting one offense to serve as the predicate offense for another, or requiring jurors to be instructed about what they must find unanimously and beyond a reasonable doubt.

In applying the "elements" clauses of the various definitions of crimes of violence and similar phrases, courts focus on the elements of the crime of conviction. When dealing with a divisible statute that provides for multiple crimes, a court must "determine what crime, with what elements" a defendant was really "convicted of" before deciding whether it counts as a predicate for § 924(c) or similar purposes. *Mathis*, 136 S. Ct. at 2249; see also *United States v. Franklin*, 895 F.3d 954, 958 (7th Cir. 2018); *United States v. Enoch*, 865 F.3d 575, 579–80 (7th Cir. 2017). To do so, a court may review a limited class of documents, including the indictment, jury instructions, and sentencing transcripts. See *Shepard v. United States*, 544 U.S. 13, 16 (2005); *United States v. Ker Yang*, 799 F.3d 750, 753 (7th Cir. 2015). This technique is known as the modified categorical approach. *Enoch*, 865 F.3d at 580.

To determine whether a provision describing multiple ways of committing an offense is divisible into alternative elements, or instead contains just one element that can be committed by different means, we start with the foundation that a crime's elements are the set of propositions that must be established beyond a reasonable doubt. See *Mathis*, 136 S. Ct. at 2248; *Alleyne v. United States*, 570 U.S. 99, 107–16 (2013); *Apprendi v. New Jersey*, 530 U.S. 466, 476–77 (2000); *Richardson v. United States*, 526 U.S. 813, 817 (1999). If a statute lists different ways to commit a crime and the jurors need not agree on which way the defendant did it, then the listed ways cannot be treated as distinct elements.

With that principle in mind, to determine whether a statute is divisible—and thus subject to the modified categorical approach—we look first to the statute defining the predicate offense. See *Mathis*, 136 S. Ct. at 2248–49; *Curtis Johnson v. United States*, 559 U.S. 133, 144 (2010). If the statute assigns different maximum or minimum penalties to different variants of the offense, then we can be sure that each of those variants is a distinct crime defined by alternative elements. See *Mathis*, 136 S. Ct. at 2256 ("If statutory alternatives carry different punishments, then under *Apprendi* they must be elements."); *Enoch*, 865 F.3d at 579; *United States v. Edwards*, 836 F.3d 831, 837 (7th Cir. 2016).

If the statute assigns the same penalty range to different listed ways of committing the crime, the problem may be more difficult. In *Mathis*, the Supreme Court offered an "easy" answer for some cases. If controlling judicial precedent holds that jurors need not agree on a given proposition, then that proposition is not an element. In *Mathis*, for example, the Iowa burglary statute, according to the Iowa Supreme Court, stated

"alternative method[s] of committing one offense, *so that a jury need not agree* whether the burgled location was a building, other structure, or vehicle." The statute thus listed different "means" of committing the same offense and was not divisible. *Mathis*, 136 S. Ct. at 2256 (emphasis added) (internal quotation marks omitted).

In the case of 18 U.S.C. § 1952 as a predicate for § 924(c), we do not have the benefit of such direct judicial holdings on the questions. We start with the statutes.

At the time of Haynes' robberies in 1996, as now, § 924(c) made it a crime to carry or use a firearm "during and in relation to any crime of violence or drug trafficking crime … for which [the defendant] may be prosecuted in a court of the United States." 18 U.S.C. § 924(c)(1) (1994). Likewise, in 1996, § 924(c) defined "crime of violence" as follows:

> (3) For purposes of this subsection the term "crime of violence" means an offense that is a felony and—
>
> > (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> >
> > (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

*Davis* has since invalidated § 924(c)(3)(B) as unconstitutionally vague, leaving only subparagraph (A) in force. See also *Cardena*, 842 F.3d at 996 (anticipating *Davis* on this issue).

Section 1952 has been amended since 1996, but not in any significant way. When Haynes drove to Iowa and robbed the three stores, the statute provided in relevant part:

> (a) Whoever travels in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, with intent to—
>
>> (1) distribute the proceeds of any unlawful activity; or
>>
>> (2) *commit any crime of violence to further any unlawful activity*; or
>>
>> (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,
>
> And thereafter performs or attempts to perform—
>
>> (A) an act described in paragraph (1) or (3) shall be fined under this title, imprisoned not more than 5 years, or both; or
>>
>> (B) *an act described in paragraph (2)* shall be fined under this title, imprisoned for not more than 20 years, or both, and if death results shall be imprisoned for any term of years or for life.

18 U.S.C. § 1952 (1994) (emphasis added).

Section 1952 does not define "crime of violence," so the general definition from 18 U.S.C. § 16 applies. See *Davis*, 139 S. Ct. at 2330–31; *United States v. Sanders*, 708 F.3d 976, 993

(7th Cir. 2013) (stating that Congress used term "crime of violence" consistently throughout criminal code). Section 16 defines "crime of violence" as:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

And, we now know, the residual clause in § 16(b) is unconstitutionally vague. See *Dimaya*, 138 S. Ct. 1204.

The text of § 1952 shows that it creates some distinct offenses and is thus divisible to some extent. For example, a conviction under § 1952(a)(2)(B) for interstate travel to commit a crime of violence carries a longer sentence than a conviction under § 1952(a)(1)(A) for interstate travel to distribute proceeds of unlawful activity. Those different penalties show that those different parts of the statute define distinct offenses with distinct elements. See *Mathis*, 136 S. Ct. at 2256; *Enoch*, 865 F.3d at 579; *Edwards*, 836 F.3d at 837.

We use the modified categorical approach to determine which provision is at issue. See *Mathis*, 136 S. Ct. at 2249. The indictment shows that the relevant counts charged Haynes with traveling interstate "with the intent to commit a crime of violence to further an unlawful activity" and with actually "committing the offense of robbery" as defined in 18 U.S.C. § 1951. We agree with the parties that this language alleges

violations of § 1952(a)(2)(B).[2] Thus, the government was required to prove that Haynes (1) traveled in interstate commerce (2) intending to commit a crime of violence to further unlawful activity and (3) afterward committed or attempted to commit a crime of violence. See *United States v. Dvorkin*, 799 F.3d 867, 876 (7th Cir. 2015) (explaining § 1952).

But Haynes argues that § 1952(a)(2)(B) is where the statute's divisibility into distinct, alternative offenses ends, so that a particular crime of violence (like the Hobbs Act robberies alleged in this case) need not be proven beyond a reasonable doubt to the satisfaction of a unanimous jury. If that were correct, his convictions under § 1952(a)(2)(B) could not serve as crimes of violence for purposes of § 924(c). He contends that although one element of § 1952(a)(2)(B) is committing or trying to commit a crime of violence, "the actual crime of violence committed is simply a means of establishing the crime of violence element" of the § 1952 offense. And, he continues, because we now know that the expansive § 16(b)—which in 1996 was one way to satisfy § 1952's "crime of violence" requirement—is unlawfully vague, at the time of his 1996 robberies, § 1952 swept in more "crimes of violence" than § 924(c) allows today. By this reasoning, he concludes that his § 924(c) convictions based on the § 1952 offenses are invalid.

---

[2] The text shows that § 1952(a)(2)(B) is actually further divisible: one variant carries a maximum prison term of 20 years, but that maximum rises to life imprisonment if death results from the crime of violence. There is no allegation of death here, so the 20-year variant applies in this case.

The government responds that § 1952(a)(2)(B) uses alternative offense elements based on the underlying crime of violence, so that the modified categorical approach can be used to determine which offenses support Haynes' § 1952 convictions. The government contends that "a § 1952(a)(2)(B) prosecution requires the government to prove the defendant committed all the acts of the underlying crime of violence." If that is correct, then a court may look to the indictment and verdicts to determine whether the underlying "crime of violence"—Hobbs Act robbery—is covered by the still-valid elements clause in 18 U.S.C. § 924(c)(3)(A). And it is. Hobbs Act robbery is a categorical crime of violence under § 924(c) because it has as an element the actual, attempted, or threatened use of force. *Fox*, 878 F.3d at 579.

As a general proposition, we agree with the government that § 1952(a)(2)(B) incorporates the elements of the underlying crime of violence, thereby creating multiple alternative offenses. We base our decision on several lines of comparison involving statutory cross-references that are common in federal criminal law. Incorporating elements by such references is consistent with the way courts analyze a number of federal criminal statutes that refer to others, most typically to enhance the penalties for actions that are already criminal.

In § 1952(a) itself, for example, paragraphs (1), (2), and (3) all require that the travel or use of mails or interstate or foreign commerce occur with intent to act in relation to some other "unlawful activity." Paragraph (1) requires intent to distribute the proceeds of "any unlawful activity," while paragraph (2) requires intent to commit any crime of violence "to further any unlawful activity." Paragraph (3) requires intent

to "otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity." The statute defines "unlawful activity" in subsection (b) to include both violent and non-violent activities: gambling, selling illegal liquor, drug distribution, prostitution, extortion, bribery, arson, money-laundering, and so on. We and other circuits interpret the "unlawful activity" language as an element that requires specific proof of a particular unlawful activity, signaling that the unlawful activity is an element. That makes § 1952(a) divisible with respect to different kinds of "unlawful activity." See *Myers v. Sessions*, 904 F.3d 1101, 1108–09 & n.4 (9th Cir. 2018) (collecting cases, including *United States v. Dvorkin*, 799 F.3d 867, 876 (7th Cir. 2015) (§ 1952 requires "the intent to commit a specified unlawful act")). In *Myers*, the Ninth Circuit applied the modified categorical method to determine whether a conviction under § 1952 was a "controlled substance offense" that rendered a non-citizen removable from the United States under 8 U.S.C. § 1227(a)(2)(B)(i). *Myers* held that the statute is divisible and that the specific "unlawful activity" is an element of the offense, so that Myers' conviction could properly be treated as a conviction for a controlled substance offense for immigration purposes.

Similarly, § 924(c) itself incorporates the elements of the underlying crime of violence. *United States v. Rodriguez-Moreno*, 526 U.S. 275, 280 (1999) ("a defendant's violent acts are essential conduct elements" for purposes of venue for § 924(c) prosecution). Haynes argues that *Rodriguez-Moreno* dealt with venue and specific facts, not the categorical method that applies here. But the focus of the venue analysis is on the acts establishing the elements of the offense. *Rodriguez-Moreno*

held squarely that the elements of the underlying crime of violence are elements of a § 924(c) offense:

> To prove the charged § 924(c)(1) violation in this case, the Government was required to show that respondent used a firearm, that he committed all the acts necessary to be subject to punishment for kidnaping (a crime of violence) in a court of the United States, and that he used the gun "during and in relation to" the kidnaping of Avendano.

526 U.S. at 280. Because the kidnaping element was committed in New Jersey in that case, the § 924(c) offense was properly venued there as well, even if the defendant did not possess or use a firearm in New Jersey over the course of the interstate kidnaping.

Similarly, the "continuing criminal enterprise" offense in 21 U.S.C. § 848 requires proof that the defendant committed a drug offense as part of a "continuing series of violations" of drug laws. In *Richardson v. United States*, 526 U.S. 813, 815 (1999), the Supreme Court held that other *specific* violations are elements that the jury must agree upon unanimously: "a jury in a federal criminal case brought under § 848 must unanimously agree not only that the defendant committed some 'continuing series of violations' but also that the defendant committed each of the individual 'violations' necessary to make up that 'continuing series.'"

In *Dimaya*, the Supreme Court similarly applied the categorical method, looking first through layers of statutes with cross-references to other statutes to define "aggravated felony" under the Immigration and Naturalization Act, which

cross-references "crime of violence" in § 16, and then apply-ing that definition to the elements of the underlying state bur-glary offense.  See 138 S. Ct. at 1211, 1217.

Or consider prosecutions under the substantive RICO pro-visions of 18 U.S.C. § 1962(a), (b), or (c). They all require proof of a "pattern of racketeering activity," which requires proof of at least two acts of "racketeering activity," defined in terms of numerous other federal and state crimes. 18 U.S.C. § 1961(1). Specific "acts of racketeering activity" are elements that must be proven beyond a reasonable doubt and subject to unani-mous jury findings. See, e.g., *United States v. Gotti*, 451 F.3d 133, 137 (2d Cir. 2006) ("In order to find that a defendant par-ticipated in two racketeering acts, as needed to establish a 'pattern,' the jury must be unanimous not only that at least two acts were proved, but must be unanimous as to each of two predicate acts."); *United States v. Maloney*, 71 F.3d 645, 662 (7th Cir. 1995) (noting separate special verdicts as to each charged act).[3]

Similarly, in *United States v. Armour*, 840 F.3d 904, 907–09 (7th Cir. 2017), we looked through a defendant's conviction under 18 U.S.C. § 2, the general aiding and abetting statute, and analyzed whether his underlying attempted offense—federal bank robbery, 18 U.S.C. § 2113(a)—qualified as a crime of violence under § 924(c). And in *Hill v. United States*, 877 F.3d 717, 719 (7th Cir. 2017), we adopted that approach for

---

[3] The rule is different for RICO conspiracies charged under § 1962(d). See *Salinas v. United States*, 522 U.S. 52, 65–66 (1997) (government need not prove that individual conspirator committed or agreed to commit two or more predicate acts needed for substantive RICO violation); *United States v. Neapolitan*, 791 F.2d 489, 492 (7th Cir. 1986) (same).

all convictions that arise under a jurisdiction's general at-
tempt statute: "When a substantive offense would be a violent
felony under § 924(e) and similar statutes, an attempt to com-
mit that offense also is a violent felony."

Other circuits have taken similar approaches to statutes
that incorporate by reference elements from other statutes,
regulations, or schedules. See *United States v. Ceron*, 775 F.3d
222, 228 (5th Cir. 2014) ("[I]n defining the elements of a crime
for the purposes of applying the modified categorical ap-
proach, laws and regulations cross-referenced by the charged
statute can also be the subject of the modified categorical ap-
proach." (cleaned up)); *Coronado v. Holder*, 759 F.3d 977, 984–
85 (9th Cir. 2014) (using modified categorical approach be-
cause controlled-substance statute incorporated various drug
schedules and statutes); *United States v. Abbott*, 748 F.3d 154,
158–59 (3d Cir. 2014) (same).

In keeping with that body of precedent, we conclude that
the elements of the underlying "crime of violence" support-
ing a § 1952(a)(2)(B) charge are incorporated as elements in
the § 1952(a)(2)(B) charge itself.[4] That means that a
§ 1952(a)(2)(B) offense is "divisible" and may qualify as a
crime of violence for purposes of § 924(c) if the underlying

---

[4] By implication, our holding requires the government, in prosecuting
future cases under § 1952(a)(2)(B), to prove to a jury that a defendant com-
mitted or attempted a specific crime of violence, and the jury must agree
which crime of violence is the basis of the § 1952 conviction. At argument
Haynes asserted that juror unanimity on the underlying crime of violence
was not required. But as detailed above, the authority is against him on
the proper reading of § 1952. Our circuit's Pattern Criminal Jury Instruc-
tions for § 1952 may need to be updated to account for this need for una-
nimity on the relevant "crime of violence" under § 1952(a)(2)(B).

crime supporting the § 1952(a)(2) conviction would itself qualify as a crime of violence under § 924(c). And as noted above, Hobbs Act robbery in violation of § 1951 so qualifies. *Fox*, 878 F.3d at 579.

B. *Haynes' Trial and Convictions*

Applying the modified categorical approach, we may examine the indictment and verdicts to determine whether Haynes' § 1952(a)(2)(B) convictions qualify as crimes of violence. Looking at the indictment and verdicts, each § 1952 charge and conviction was based on a specific Hobbs Act robbery. Count 3 was based on the February 9, 1996 robbery of an Eagle Food Center in Davenport, Iowa, in violation of 18 U.S.C. § 1951. Count 5 was based on the February 13, 1996 robbery of a Jewell Food Store, also in Davenport, also charged in violation of § 1951. And Count 10 was based on the February 27, 1996 robbery of a Venture store, also in Davenport and also charged as a violation of § 1951. Each charge alleged that Haynes took property from store employees "by means of actual and threatened force, violence, and fear of injury, immediate and future, to their persons and to property in their custody as employees of the business in that he did use and display a firearm in a threatening manner to assist in committing the robbery."

The jury verdicts show that the jury found that Haynes had committed each Hobbs Act robbery supporting each of the three § 1952 charges. Each verdict was phrased: "We the jury find the defendant, Stacy M. Haynes <u>Guilty</u> of the offense of interstate travel in aid of racketeering enterprises *as alleged* in Count" 3, 5, or 10. (Emphasis added.) Each § 924(c) verdict was phrased: "We the jury find the defendant, Stacy M. Haynes <u>Guilty</u> of the offense of using and carrying a firearm

during and in relation to a crime of violence as alleged in Count" 4, 6, or 11. Given the allegations in the indictment, the only path to these convictions was to find that Haynes had committed the three Hobbs Act robberies used as predicates for the § 1952 charges.

Haynes points out, however, that the jury was not actually instructed on the specific elements of the Hobbs Act robberies that occurred in Iowa. The jury instructions for the § 1952 charges used the following elements:

> First, the defendant traveled in interstate commerce, or used or caused to be used a facility in interstate commerce, including the mail;
>
> Second, the defendant did so with the intent to commit a crime of violence to further unlawful activity;
>
> Third, thereafter the defendant did commit or attempt to commit a crime of violence to further unlawful activity.

App. 62. These instructions on Counts 3, 5, and 10 did not spell out the elements of each underlying Hobbs Act robbery as alleged in the indictment. The jury was, however, given instructions for Counts 1, 8, and 12 that detailed the elements of Hobbs Act robbery for purposes of those counts. And a later instruction defined the term "crime of violence" by giving the jury the statutory definitions in 18 U.S.C. § 16, including the now-unconstitutional residual clause in § 16(b).

With the hindsight of twenty years, during which the applicable law has changed substantially, we can say that today a jury should be instructed differently on such charges that embed a Hobbs Act robbery within a § 1952 violation within

a § 924(c) violation. We would ordinarily expect more detail in terms of the elements of the underlying Hobbs Act robberies, and we would not expect to give the jury the question of law about what counts as a "crime of violence."

We do not, however, believe that such criticism of the jury instructions requires that these § 924(c) convictions be set aside. We agree with Judge McDade:

> Here, the ultimate "crime of violence" alleged in the Indictment was robbery and the definition of "robbery" given was from 18 U.S.C. § 1951(b)(1). In order to find Petitioner guilty of the § 924(c) violations, Petitioner's jury had to find he committed or attempted to commit Hobbs Act robberies, which *Anglin* holds necessarily requires using or threatening force. That means the use or threat of force was an implicit element of each of the § 924(c) convictions predicated on the § 1952 convictions, which were in turn predicated on Hobbs Act robberies.

237 F. Supp. 3d at 827–28.[5]

This was the view of the judge who presided over the trial and understood best how the issues developed at trial. The issues at trial did not involve the doctrinal nuances implicated by the categorical method or the modified categorical method.

---

[5] The citation was to *United States v. Anglin*, 846 F.3d 954 (7th Cir. 2017), which was later vacated by the Supreme Court on other grounds, for reconsideration in light of *Dean v. United States*, 137 S. Ct. 1170 (2017). See *Anglin v. United States*, 138 S. Ct. 126 (2017). We have cited *United States v. Fox*, 878 F.3d 574, 579 (7th Cir. 2017), for the same Hobbs Act point.

Nor did they involve particular elements of robbery in general or Hobbs Act robbery in particular. The issue was identity: whether Haynes was the person who had committed what were obviously robberies (of businesses engaged in interstate commerce). See *United States v. Haynes*, 172 F.3d 54 (table), 1999 WL 38088 (7th Cir. 1999) (direct appeal challenged denial of compensation for expert witness on reliability of eyewitness identification; no issue raised regarding jury instructions).

District judges craft jury instructions to fit the particular trial, focusing the jurors' attention on what is disputed, without burdening them with detailed explanations of undisputed legal points. The instructions should of course include each element of each charge. *Neder v. United States*, 527 U.S. 1, 6–8 (1999); *United States v. Gaudin*, 515 U.S. 506, 510 (1995); *United States v. Edwards*, 869 F.3d 490, 499 (7th Cir. 2017). But even the omission of an element is subject to harmless-error and plain-error analysis. *Neder*, 527 U.S. at 9–10; *Johnson v. United States*, 520 U.S. 461, 468–70 (1997) (no plain error where judge decided one issue that should have been submitted to jury); *United States v. Natale*, 719 F.3d 719, 734 (7th Cir. 2013) (finding plain error in failure to instruct jury on one element, but denying relief where overwhelming evidence on the element showed that omission did not affect defendant's substantial rights and was harmless).

In this case, the hindsight we can bring twenty years after the trial, with the benefit of knowing the issues being raised now, would favor including more detailed jury instructions. They might have included all the elements of the underlying Hobbs Act robberies in Iowa (in addition to those given for the ones in Illinois). And that hindsight tells us the judge

should have decided the questions of law, which include what counts as a "crime of violence" under § 1952 and § 924(c). As a practical matter, though, without objections to the jury instructions as given, without challenges to the instructions on direct appeal, and without indications that those different jury instructions would have addressed truly contested issues, we see no sound basis for relief here. The jury had the charges in the indictment, and it found Haynes guilty of all but one charge "as alleged" in the respective counts of the indictment.

In other words, the only basis for convicting Haynes on the § 924(c) counts stemming from the § 1952 counts was to find that he committed the three Iowa robberies that plainly qualify as crimes of violence under the still-valid elements clauses of the definitions in § 924(c)(3)(A) and § 16(a).

Because the modified categorical approach applies to determine that Haynes' § 1952 convictions incorporated the elements of Hobbs Act robbery, and because Hobbs Act robbery is a "crime of violence" under § 924(c)(3)(A), Haynes' § 1952 convictions are valid predicate offenses for the three corresponding § 924(c) convictions. The judgment of the district court is therefore

AFFIRMED.