In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-3713

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

BRIAN K. CARTER,

*Defendant-Appellant*.

Appeal from the United States District Court for the
Central District of Illinois.
No. 4:18-cr-40004-JES-JEH-1 — **James E. Shadid**, *Judge*.

ARGUED OCTOBER 2, 2019 — DECIDED JUNE 8, 2020

Before BAUER, RIPPLE, and HAMILTON, *Circuit Judges*.

HAMILTON, *Circuit Judge*. Brian Carter pleaded guilty to possessing a firearm as a felon, see 18 U.S.C. § 922(g), after police officers arrested him and found a stolen handgun in his possession. At sentencing, the district court calculated his Sentencing Guideline range based on a finding that he had previously sustained at least two felony convictions for "crimes of violence." U.S.S.G. § 2K2.1(a)(2). The court imposed a sentence of 105 months in prison, at the top of the

resulting guideline range. Carter appeals, arguing that the district court erred in classifying two of his prior convictions as crimes of violence.

We affirm. Carter had at least two prior felony convictions that qualify as crimes of violence under the categorical approach required under the Guidelines. In light of the discussion that follows, we also remind district courts that the classification of prior convictions under the Sentencing Guidelines can produce abstract disputes that bear little connection to the purposes of sentencing. As the Sentencing Commission itself has recognized since the Sentencing Guidelines were first adopted, district judges may and should use their sound discretion to sentence under 18 U.S.C. § 3553(a) on the basis of reliable information about the defendant's criminal history even where strict categorical classification of a prior conviction might produce a different guideline sentencing range.

I.  *Factual and Procedural Background*

Four months after escaping from a work-release facility, an intoxicated Brian Carter walked into an Illinois bar. He told an employee that the "Woodpile"—a white-supremacist gang—was searching for him and then walked out. The employee reported the incident to the police, who stopped Carter on the street shortly after and discovered an active arrest warrant related to his escape. As he was being handcuffed, Carter told the officers that he was "strapped" and gestured towards his pants with his head. Officers seized a stolen, loaded semiautomatic pistol from Carter's waistband. Carter had several prior felony convictions, so federal law prohibited him from possessing any firearms. He later pleaded guilty to unlawfully possessing a firearm in violation of 18 U.S.C. § 922(g).

Section 2K2.1(2) of the Sentencing Guidelines sets the base offense level for a conviction under 18 U.S.C. § 922(g) at 24 for a defendant convicted of at least two prior "crimes of violence" as defined in U.S.S.G. § 4B2.1(a). According to his Presentence Investigation Report, Carter had two prior convictions that qualified as crimes of violence under that definition: assault with a deadly weapon (in California) and aggravated assault (in Iowa). The report did not contain many details about the California conviction but noted that the 2015 Iowa conviction resulted from a guilty plea in which Carter admitted that he "displayed a knife during an altercation … in violation of sections 708.1 and 708.2(3) of the Iowa Criminal Code." The report also documented, but did not classify, a related 2015 Iowa conviction for domestic abuse assault in which Carter admitted that he "bit [his] wife … on her cheek causing bodily injury." Based on the California conviction for assault with a deadly weapon and the Iowa conviction for aggravated assault, the report set Carter's base offense level at 24. Without any prior convictions for crimes of violence, the base offense level would have been 20, and with only one crime of violence, it would have been 22. U.S.S.G. § 2K2.1(a)(2)–(4).

The government agreed that the base offense level was correctly calculated but argued that all three convictions—including the Iowa conviction for domestic abuse assault—were crimes of violence under the Guidelines. For his part, Carter conceded that the California conviction for assault with a deadly weapon was a crime of violence. He argued, however, that the PSR set his base offense level too high because neither of his Iowa convictions qualified categorically as a crime of violence under the Guidelines. According to Carter, Iowa defined aggravated assault more broadly than the generic

meaning of the offense and did not require the state to prove threatened use of physical force as an element. He further argued that the Iowa conviction for domestic abuse assault did not require proof that he used or threatened to use physical force. The district court "adopt[ed] the position of the government" that both Iowa convictions were crimes of violence" and ruled that Carter had three qualifying convictions without further elaboration. Starting with a base offense level of 24, the court added two more levels because Carter's firearm was stolen, § 2K2.1(b)(4), and subtracted three levels for acceptance of responsibility, § 3E1.1, producing a total offense level of 23. With criminal history category V, this calculation yielded a guideline range of 84 to 105 months in prison. The court sentenced Carter to 105 months in prison, the high end of that range.

## II. *Analysis*

On appeal, Carter argues that the district court erred in calculating his guideline range by using base offense level 24. The Sentencing Guidelines are no longer binding, but the correct calculation of a defendant's guideline range is "the starting point and the initial benchmark" for federal sentencing. *Gall v. United States*, 552 U.S. 38, 49 (2007). An incorrect calculation of the guideline range is a procedural error that we presume influenced the sentence unless the judge said otherwise. E.g., *United States v. Marks*, 864 F.3d 575, 582 (7th Cir. 2017), citing *United States v. Adams*, 746 F.3d 734, 743 (7th Cir. 2014); see generally *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1347–48 (2016) (under plain-error review, even a guideline error not challenged in district court is presumed to affect defendant's substantial rights, at least if sentencing court did not

indicate it would have imposed same sentence absent the error).

Carter concedes that his California conviction for assault with a deadly weapon counts as a crime of violence, so if either of the Iowa convictions properly counts, the district court's guideline calculation was correct. We conclude that his conviction for aggravated assault counts as a crime of violence under the "elements clause" of the guideline definition. That's enough to affirm.

Application Note 1 of U.S.S.G. § 2K2.1 instructs courts to determine the base offense level for a violation of 18 U.S.C. § 922(g)(1) by using the definition of "crime of violence" in the career offender guideline, § 4B1.2(a) and its Application Note 1. Here is the definition:

> The term "crime of violence" means any offense under federal or state law punishable by imprisonment for a term exceeding one year, that –
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use of unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

U.S.S.G. § 4B1.2(a).

We review de novo whether prior offenses are crimes of violence under the Sentencing Guidelines. *United States v.*

*Edwards*, 836 F.3d 831, 834 (7th Cir. 2016). To determine whether a prior conviction amounts to a "crime of violence," we apply a categorical approach that compares the elements in the statute of conviction to the federal statute or guideline definition. E.g., *Descamps v. United States*, 570 U.S. 254, 260–61 (2013). The categorical approach has developed primarily under the mandatory statutory provisions of 18 U.S.C. § 924(c) and (e), as in *Descamps*, but it also applies under guideline provisions such as § 4B1.2. See *Edwards*, 836 F.3d at 834–35. If the state law defines an offense more broadly than the Guidelines, the prior conviction does not qualify as a crime of violence; if the state-law elements match up with or are narrower than the Guidelines, however, then the prior conviction qualifies. *Taylor v. United States*, 495 U.S 575, 602 (1990) (applying 18 U.S.C. § 924(e)).

When the statute of conviction contains multiple parts, the comparison is more complex. A statute may create multiple offenses, each with its own distinct set of elements, or it may list multiple "means" of satisfying broader elements. *Haynes v. United States*, 936 F.3d 683, 688 (7th Cir. 2019). A statute that creates multiple offenses is "divisible," and if it is not clear from the prior judgment which portion was violated, a court may modify the categorical approach to examine a limited set of documents to determine the crime of conviction. See *Mathis v. United States*, 136 S. Ct. 2243, 2250 (2016); *Shepard v. United States*, 544 U.S. 13, 26 (2005). If the state statute lists only "means"—alternative ways of committing a crime—so that jurors may convict without agreeing on *how* a defendant committed it, the statute is not divisible. *Mathis*, 136 S. Ct. at 2251. Whether particular variants of a statute are "means" or "elements" is thus a threshold inquiry. A state supreme court decision construing the statute can provide the answer. *Id*. at

2256. In the absence of a controlling court decision, the text and structure of the statute may resolve the question; in particular, if different variants carry different punishments, they necessarily constitute distinct crimes with different elements. *Id*.

We focus our analysis on Carter's 2015 conviction for aggravated assault under § 708.2(3) of the Iowa Code. "Aggravated assault" is an enumerated crime of violence under U.S.S.G. § 4B1.2(a)(2), but Carter argues that the Iowa offense is broader than the generic offense for guideline purposes. This court, unlike some other circuits, has not identified a generic definition of aggravated assault to which the Iowa statute could be compared. See, e.g., *United States v. Esparza-Perez*, 681 F.3d 228, 229 (5th Cir. 2012). But we need not take that route here because a conviction under Iowa's aggravated assault statute based on display of a deadly weapon, § 708.2(3), contains the threatened use of physical force as an element.

Under the elements clause of § 4B1.2(a), a "crime of violence" is any state or federal offense punishable by a prison term exceeding one year that "has as an element the use, attempted use, or threatened use of physical force against the person of another." § 4B1.2(a)(1). The Supreme Court defines "physical force" in this context as "force capable of causing physical pain or injury to another person." *Curtis Johnson v. United States*, 559 U.S. 133, 140 (2010) (applying Armed Career Criminal Act).

Carter pleaded guilty to a violation of § 708.2(3) of the Iowa Code, which provides that an offender "who commits assault, as defined in section 708.1, and uses or displays a dangerous weapon in connection with the assault, is guilty of an

aggravated misdemeanor."[1] Iowa Code § 708.2(3) (2010). Section 708.1, in turn, lists three different ways for an offender to commit an assault:

> (a)  Any act which is intended to cause pain or injury to, or which is intended to result in physical contact which will be insulting or offensive to another, coupled with the apparently ability to execute the act.

> (b)  Any act which is intended to place another in fear of immediate physical contact which will be painful, injurious, insulting, or offensive, coupled with the apparent ability to execute the act.

> (c)  Intentionally pointing any firearm toward another, or displaying in a threatening manner any dangerous weapon towards another.

§ 708.1(2). The Iowa Supreme Court has concluded that the different subsections of the simple assault statute, § 708.1, constitute distinct crimes. See, e.g., *State v. Fountain*, 786 N.W.2d 260, 265 (Iowa 2010) (explaining essential elements of "assault alternatives").[2] Accordingly, we apply the modified categorical approach and may consult the so-called *Shepard*

---

[1] Under Iowa law, "aggravated misdemeanors" are punishable by up to two year in prison. See Iowa Code § 903.1 (2014). They can therefore qualify as predicate offenses under U.S.S.G. § 4B1.2(a) despite the "misdemeanor" label in state law.

[2] Iowa amended § 708.1 in 2013, but that amendment was stylistic and affected only the numbering of the statute's subdivisions. We use here the current numbering, which was also in effect in Carter's case.

documents to determine what Carter's offense of conviction. See *Mathis*, 136 S. Ct. at 2249–50.

The judgment does not specify which type of simple assault under § 708.1 provided the basis for the aggravated assault conviction. And Carter's plea agreement is not illuminating: it simply reproduced the entire assault statute instead of identifying what specific conduct the state would be required to prove in addition to the aggravating factor. The charging information and the criminal complaint allege that Carter "assaulted" the victim and "used or displayed a dangerous weapon in connection with the assault" without specifying which kind of underlying assault. Carter admitted in his plea agreement, however, that he displayed a knife during an altercation. And his brief, addresses only one type of underlying simple assault—"displaying in a threatening manner any dangerous weapon towards another." Section 708.1(2)(c) thus provided the basis for his aggravated assault conviction.

Carter insists that this type of aggravated assault does not require proof of "the use, attempted use, or threatened use of physical force against the person of another." See § 4B1.2(a). Merely displaying a weapon, he argues, does not necessarily imply or indicate its use. He attempts to draw a distinction between displaying a dangerous weapon in a threatening manner and threatening to use physical force, and he says that a person could have been convicted of this crime even if the victim was not aware that the defendant displayed a weapon. In support of his arguments, Carter relies primarily on the non-precedential decision in *United States v. Rico-Mendoza*, 548 F. App'x 210, 213–14 (5th Cir. 2013), a pre-*Mathis* case in which the Fifth Circuit applied the "crime of violence"

definition in U.S.S.G. § 4B1.2 and decided that the Iowa aggravated assault statute did not "clearly requir[e] the commission of the acts constituting an underlying generic 'assault.'" The court continued: "The statutes do not require use of the weapon, threatened use of the weapon, touching another person with the weapon, or that a victim even be aware that the weapon is pointed or displayed toward them." *Id.* at 214. The government responds that *Rico-Mendoza* was wrongly decided and urges us to adopt the reasoning of the Eighth Circuit, which has repeatedly held that Iowa's aggravated assault statute, § 708.2(3), defines a crime of violence. See, e.g., *United States v. McGee*, 890 F.3d 730, 737 (8th Cir. 2018); *United States v. Boots*, 816 F.3d 971, 974 (8th Cir. 2016); *United States v. Maid*, 772 F.3d 1118, 1121 (8th Cir. 2014).

Carter's conviction qualifies as a crime of violence because it required that he displayed a dangerous weapon at another person in a threatening manner. Under the Iowa statute of conviction, the state had to prove that: (1) in connection with an assault, Carter "used or displayed," § 708.2(3); (2) a dangerous weapon,—i.e., an "operational weapon capable of lethal use," § 702.7; and that he (3) "[i]ntentionally point[ed] any firearm toward another, or display[ed] in a threatening manner any dangerous weapon towards another." § 708.1(2)(c). Brandishing a deadly weapon in the context of an assault threatens "force capable of causing physical pain or injury to another person." *Curtis Johnson*, 559 U.S. at 140.

The Supreme Court has clarified that the threat of physical force "does not require any particular degree of likelihood or probability that the force used will cause physical pain or injury; only *potentiality*." *Stokeling v. United States*, 139 S. Ct. 544, 554 (2019) (emphasis added). Given the emphasis on potential

over probability of injury, we agree with the Eighth Circuit's conclusion that "displaying an operational weapon before another in an angry or threatening manner qualifies as a threatened use of physical force." *McGee*, 890 F.3d at 736 (citations omitted). At a minimum, Carter's conviction required proof of the "threatened use of physical force against the person of another" sufficient to satisfy the elements prong of the "crime of violence" definition under the Guidelines. U.S.S.G. § 4B1.2(a)(1).

Carter's arguments to the contrary are not persuasive. Relying on *Rico-Mendoza*, he hypothesizes that a person could be convicted under § 708.2(3) and § 708.1(2)(c) without proof that the underlying assault occurred. But committing assault is an element of the aggravated assault offense: the enhanced penalty applies only to "a person who commits an assault as defined in section 708.1." The court in *Rico-Mendoza* apparently concluded otherwise, but that conclusion is difficult to square with the statutory texts. Moreover, we have found no examples of Iowa courts convicting a defendant for aggravated assault for accidentally displaying a weapon or displaying a weapon without a victim. This makes sense because the underlying assault statute requires the "intentional" display of a weapon "in a threatening manner" "toward another." Aggravated assault under § 708.2(3) of the Iowa Code, with a predicate assault under § 708.1(2)(c), necessarily involves at least the threat to use physical force. The district court therefore did not err in ruling that Carter's conviction for aggravated assault in Iowa was a crime of violence.

Because Carter's conviction for aggravated assault qualifies as a crime of violence, we do not address whether his domestic abuse assault conviction also counts. We close with

another of our occasional reminders about sentencing judges' power and responsibility to exercise sentencing discretion under 18 U.S.C. § 3553(a). Correct application of the Sentencing Guidelines as written requires use of the categorical method to classify prior convictions, as in this case. But given the facts known about Carter's aggravated assault conviction, or for that matter his domestic abuse conviction, a judge could sensibly ask why the abstract and hypothetical classifications based on other ways that other defendants might violate the same statute should be deemed important in deciding an appropriate sentence in the particular defendant's case. See, e.g., *United States v. Sonnenberg*, 628 F.3d 361, 367–68 (7th Cir. 2010) (reversing sentence based on error in classifying defendant's prior sexual abuse conviction, but noting that district court would be free on remand to consider the facts of defendant's actual conduct in exercising its sentencing discretion).

Congress has provided: "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. This power is subject to the constitutional constraint that a convicted defendant has a due process right to be sentenced on the basis of accurate information. E.g., *United States v. Tucker*, 404 U.S. 443, 447 (1972); *United States v. Adams*, 879 F.3d 826, 829 (7th Cir. 2018); *United States ex rel. Welch v. Lane*, 738 F.2d 863, 864 (7th Cir. 1984). The Sentencing Commission has recognized from the first edition of the Guidelines that the criminal history provisions were drafted so that some arbitrary consequences would be inevitable, which is why the Guidelines have always encouraged departures (and now

variances) based on criminal history scores that are over- or under-representative of the defendant's culpability. See U.S.S.G. § 4A1.3 (1987); *United States v. Marks*, 864 F.3d 575, 582–83 (7th Cir. 2017).

The categorical classification of Carter's Iowa convictions poses a case where it would be entirely appropriate for a sentencing judge to signal that he or she has used the discretion under § 3553(a) to impose a sentence that does not depend on that categorical classification. When the sentencing judge does not take that course and hews closely to the Guidelines, we will go through the analysis and reverse when necessary for guideline errors. In this case, however, we agree with Judge Shadid's classification and the resulting guideline calculation. The judgment of the district court is AFFIRMED.