In the

# United States Court of Appeals

## For the Seventh Circuit

No. 21-1134

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

RAMONE SHAFFERS,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:17-cr-00438-1 — **John J. Tharp, Jr.**, *Judge.*

ARGUED NOVEMBER 1, 2021 — DECIDED JANUARY 5, 2022

Before HAMILTON, SCUDDER, and ST. EVE, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Ramone Shaffers was charged with possession of a firearm by a convicted felon after a gun was recovered from his car during an encounter with Chicago police. At his first trial, the jury deadlocked and the district court declared a mistrial. Shaffers was then tried again, with an obstruction of justice count added based on his attempts to influence witness testimony before the first trial. He was convicted on both counts.

Shaffers now appeals his felon-in-possession conviction on four separate grounds. He argues that the gun should have been suppressed; that his Confrontation Clause rights were violated by admitting a witness's grand jury testimony; that the evidence of possession was insufficient to support his conviction; and that his prior aggravated assault conviction was improperly considered a "crime of violence" at sentencing. We reject all four challenges.

I.   *Motion to Suppress*

Shaffers first argues that the gun recovered from his car should have been suppressed as the product of an unlawful stop. On that issue, we review the district court's legal conclusions de novo and its factual findings for clear error. *United States v. Wood*, 16 F.4th 529, 532–33 (7th Cir. 2021).

A.   *Factual and Procedural Background*

On the night of October 15, 2016, Shaffers attended a party in Chicago. He left around midnight with three people: Talieta Fulton, Cornell Westberry, and Shirley Butler. They all got into his car—with Shaffers in the driver's seat and Fulton in the passenger's seat—and began smoking cigarettes and listening to music while parked.

Meanwhile, Chicago Police Officers Jason Streeper and Brendan Bruno were patrolling nearby in an unmarked police car. As they drove down an alley, they heard loud music coming from Shaffers' car and smelled marijuana. They stopped directly behind the car, blocking it from pulling out. The officers then approached the car, identified themselves, and instructed the occupants to put their hands in the air. Officer Streeper had his gun drawn. He testified that Shaffers initially failed to comply with his directions and instead was "making

furtive movements with his hands below the [driver's] seat." Shaffers eventually put his hands on the steering wheel, but he then fled before the officers could detain him. While Officer Bruno unsuccessfully gave chase, Officer Streeper recovered a gun from the floorboard between the driver's seat and the console. Several months later, Shaffers was taken into custody when he appeared in state court for a traffic infraction, and he was eventually charged in federal court with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

Shaffers filed a motion to suppress the gun before his first trial on the felon-in-possession charge. After holding an evidentiary hearing, the district court concluded that the officers' initial approach was a seizure because Shaffers could not move his car and a reasonable person would not have felt free to leave. The court also held, however, that the seizure was permissible under *Terry v. Ohio*, 392 U.S. 1 (1968). In the court's view, the officers had reasonable suspicion for a *Terry* stop based on the combination of (1) the car's location in an alley in a high-crime area, playing loud music in violation of a local noise ordinance; (2) the smell of marijuana around the car; and (3) Shaffers' furtive movements and failure to immediately raise his hands. The court therefore denied Shaffers' motion to suppress.

B. *Analysis*

On appeal, the government no longer disputes that the officers' actions constituted a seizure. The question is whether

the stop violated the Fourth Amendment. We agree with the district court's conclusion that it did not.[1]

The Fourth Amendment protects against "unreasonable searches and seizures." U.S. Const. amend. IV. Accordingly, an officer conducting an investigatory stop must have "reasonable suspicion that 'criminal activity may be afoot.'" *United States v. Watson*, 900 F.3d 892, 894 (7th Cir. 2018), quoting *Terry*, 392 U.S. at 30. Reasonable suspicion requires "more than a hunch but less than probable cause." *United States v. Wilson*, 963 F.3d 701, 703 (7th Cir. 2020). Our analysis focuses on "the totality of the circumstances" and asks whether the officer had "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Navarette v. California*, 572 U.S. 393, 396–97 (2014), quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981).

Applying that standard here, we conclude that Officers Streeper and Bruno had a reasonable suspicion to justify the stop. At the moment they blocked in Shaffers' car, the officers had a reasonable, articulable suspicion that the occupants were violating a Chicago noise ordinance. As relevant here, the ordinance prohibits using a radio "to generate any sound, for the purpose of communication or entertainment, that is louder than average conversational level at a distance of 100 feet or more" between 10:00 p.m. and 8:00 a.m. Chi. Mun. Code § 8-32-070(b). At the suppression hearing, Officer Streeper testified that he heard "loud music" with "a lot of bass" coming from the car. Officer Bruno agreed, testifying

---

[1] In the district court, Shaffers also challenged the warrantless search of his car as unreasonable, but he has not pursued that argument on appeal.

that the music "was loud enough that we heard it on ap-
proach." Even Westberry and Butler testified that the music
was loud. Based on these facts, the officers had an articulable,
objective basis for believing that the occupants of Shaffers' car
were violating the noise ordinance.

To compound the officers' suspicion, they also smelled
marijuana as they drove down the alley. Contrary to Shaffers'
assertion, the officers did not have merely a "generalized sus-
picion that *someone* in the alley possessed cannabis." Both of-
ficers specifically testified that they smelled marijuana com-
ing from the vicinity of Shaffers' car. In addition, Butler testi-
fied that she and Westberry had smoked marijuana on a porch
before leaving the party, that she had the marijuana joint in
her pocket when she got into the car, and that she then threw
the joint out the window. At the time, Illinois prohibited even
recreational use or possession of marijuana. The officers
therefore had reason to believe that the occupants of the car
were violating Illinois law. Cf. *United States v. Franklin*, 547
F.3d 726, 733 (7th Cir. 2008) ("A police officer who smells ma-
rijuana coming from a car has probable cause to search that
car.").

Based on the totality of the circumstances—including the
combination of the loud music and the smell of marijuana—
the officers had a sufficient basis to block Shaffers' car and in-
vestigate.[2]

---

[2] Both the district court and the government also relied on Shaffers'
movements around the floorboard as an additional justification for the
stop. Those movements, however, occurred as the officers were approach-
ing the car—*after* the seizure had occurred. We have made clear that the
reasonableness of a stop turns on "what facts were known to [the officer]
at the time she stopped the vehicle," *United States v. Jackson*, 962 F.3d 353,

II.  *Confrontation Clause*

Second, Shaffers challenges his conviction on the ground that the admission of Talieta Fulton's grand jury testimony as substantive evidence violated the Confrontation Clause of the Sixth Amendment. We review that question de novo. *United States v. Norwood*, 982 F.3d 1032, 1042 (7th Cir. 2020).

A.  *Factual and Procedural Background*

As noted above, Fulton was in the passenger's seat of Shaffers' car on the night of October 15, 2016. After Shaffers fled and Officer Streeper discovered the gun, Fulton and the other two passengers were arrested and taken to the police station. They were eventually released without being charged.

In May 2017, Fulton appeared before a federal grand jury. She testified that she had not known there was a gun in the car that night, that she had seen the police remove the gun from under the driver's seat, and that the gun was not hers. Shaffers was then arrested and charged in June 2017.

Almost two years later, during Shaffers' first trial, Fulton testified that she had no memory of the events of October 15. She also said she did not recall her testimony before the grand jury, although she vaguely remembered the government's flying her to Chicago. Over the defense's objection, the district court allowed the government to introduce Fulton's grand jury testimony as a prior inconsistent statement under Federal Rule of Evidence 801(d)(1)(A). Before the testimony was read, Shaffers' counsel cross-examined Fulton, asking whether her lack of memory was caused by a medical condition or a fear

---

358 (7th Cir. 2020), so we do not consider Shaffers' movements in concluding that the stop was permissible at the outset.

of prosecution. He also asked about her prior criminal history. An ATF agent then read Fulton's grand jury testimony aloud.

A similar process played out in Shaffers' second trial. Fulton continued to disclaim any memory of the events in question or of testifying before the grand jury. Over a defense objection, the district court again permitted her grand jury testimony to be used as substantive evidence. This time, Fulton read the testimony herself. Shaffers' counsel then cross-examined her. He inquired into her lack of memory and asked if it was because she had been drinking on the night of her arrest. Counsel also questioned whether Fulton was "claiming not to remember anything" because she feared prosecution. And he asked her to confirm that the government was paying for her airline ticket and hotel during the trial, which she did. During closing argument, Shaffers' counsel emphasized several times that Fulton "chose not to remember" the relevant events.

B. *Analysis*

Shaffers argues that the district court's decision to allow the grand jury testimony as substantive evidence violated the Confrontation Clause. Because Shaffers had an opportunity to cross-examine Fulton and expose weaknesses in her answers to the jury, we conclude that admission of her grand jury testimony did not violate the Confrontation Clause.

In criminal cases, the Sixth Amendment provides that "the accused shall enjoy the right … to be confronted with the witnesses against him." U.S. Const. amend. VI. This guarantee has long been understood to include "the right of cross-examination." *Douglas v. Alabama*, 380 U.S. 415, 418 (1965). The Confrontation Clause guarantees only "an *opportunity* for effective cross-examination, not cross-examination that is effective in

whatever way, and to whatever extent, the defense might wish." *United States v. Owens*, 484 U.S. 554, 559 (1988), quoting *Kentucky v. Stincer*, 482 U.S. 730, 739 (1987). The Clause does not guarantee that "every witness called by the prosecution will refrain from giving testimony that is marred by forgetfulness, confusion, or evasion." *Delaware v. Fensterer*, 474 U.S. 15, 21–22 (1985). Instead, "the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose these infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony." *Id.* at 22.

Our analysis begins with the Supreme Court's decision in *Owens*. In that case, the witness was a prison counselor who had been the victim of a violent assault. 484 U.S. at 556. In an interview with an FBI agent almost one month after the incident, he identified defendant Owens as the assailant. At trial, the witness testified that he recalled identifying Owens during the interview, but he could not remember seeing his attacker. The Court held that the witness's identification of Owens could be admitted because the defendant had the opportunity "to bring out such matters as the witness' bias, his lack of care and attentiveness, his poor eyesight, and even … the very fact that he has a bad memory." *Id.* at 559. Defense counsel's closing argument, in fact, had emphasized the witness's memory loss and the possibility that his identification of Owens was unreliable. While such attacks on the witness's memory may not always succeed, the Court reiterated that "successful cross-examination is not the constitutional guarantee." *Id.* at 560.

That reasoning leads us to uphold the admission of Fulton's grand jury testimony. Here, as in *Owens*, the defense could not elicit the foundation for the witness's past belief, "but other means of impugning the belief [were] available." 484 U.S at 559. Shaffers' counsel had the opportunity to probe Fulton's lack of memory and to try to cast doubt on the reliability of her testimony. Counsel took full advantage of that opportunity at both trials, asking about her prior criminal history, the reasons for her lack of memory, and her potential bias in favor of the government. During closing argument, counsel repeatedly asserted that Fulton had chosen not to remember the events in question—just as Owens' lawyer attacked the witness's memory loss and argued that his testimony was not credible, *id.* at 560. Shaffers was therefore able to take advantage of "realistic weapons" to undermine Fulton's credibility. *Id.*; see also *United States v. Cooper*, 767 F.3d 721, 728 (7th Cir. 2014) (explaining admission of grand jury testimony where witness claimed at trial that she could not recall the statements or the underlying events).

Shaffers' attempts to distinguish *Owens* are not persuasive. He notes that the witness there suffered only partial memory loss, as he was able to testify about parts of the attack and about the interview where he identified Owens. 484 U.S. at 556. But we rejected that distinction in *United States v. Keeter*, 130 F.3d 297 (7th Cir. 1997), where a witness's grand jury testimony incriminated one of the defendants. At trial, that witness claimed that he did not remember any of the underlying events or his appearance before the grand jury. *Id.* at 302. The defendant argued on appeal that his case was different from *Owens* because the witness could not even remember making the identification. We concluded that the difference was immaterial, holding that the Confrontation Clause is satisfied

"when the witness must look the accused in the eye in court; shortcomings in the declarant's memory may be made known to the jury." *Id.*

Shaffers did not address *Keeter* in his briefs but suggested at oral argument that it is distinguishable because the witness acknowledged the prior statement as his own, whereas Fulton did not. The record, however, appears to contradict that point. Fulton may not have remembered what she said before the grand jury, but she did identify the transcript of her testimony:

> Q. Ms. Fulton, I'm sorry. Have you seen this transcript before?
>
> A. Yes.
>
> Q. And this is a transcript of your testimony before the grand jury on May 11th of 2017?
>
> A. Yes.

Shaffers also relies on *Douglas*, but the witness in that case invoked the privilege against self-incrimination and then refused to answer when repeatedly asked, "Did you make that statement?" 380 U.S. at 416–17. Fulton, by contrast, acknowledged that the transcript of the grand jury testimony was hers but said she could not recall the underlying substance. She testified that she remembered "coming out here [to Chicago]" and said: "I know I came because there was an action, but what was spoken, I don't remember." We therefore decline to adopt Shaffers' proposed distinctions. The guidance of *Owens* and *Keeter* controls here.

Nor are we convinced by Shaffers' assertion that *Crawford v. Washington*, 541 U.S. 36 (2004), changed the relevant

analysis. In that case, the Supreme Court reiterated that when a witness "appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements. … The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." *Id.* at 60 n.9; accord, *California v. Green*, 399 U.S. 149, 162 (1970) ("[W]here the declarant is not absent, but is present to testify and to submit to cross-examination, our cases, if anything, support the conclusion that the admission of his out-of-court statements does not create a confrontation problem."). After *Crawford*, we have continued to follow the *Owens* approach to cases of claimed memory loss. See, e.g., *Cookson v. Schwartz*, 556 F.3d 647, 652 (7th Cir. 2009) ("We agree with the State that *Owens* and *Keeter* are dispositive here."); *United States v. Ghilarducci*, 480 F.3d 542, 548–49 (7th Cir. 2007) (relying on both *Owens* and *Fensterer*). So while *Crawford* was an important milestone in Confrontation Clause jurisprudence, we do not read the decision as undermining our established analysis in cases involving a witness's claimed lack of memory about prior testimony.

Finally, we agree with Shaffers that a witness's physical presence in the courtroom alone is not enough to satisfy the Confrontation Clause, but no one argues otherwise. It is well established that the right of confrontation "means more than being allowed to confront the witness physically." *Davis v. Alaska*, 415 U.S. 308, 315 (1974). At oral argument, the government properly conceded that there might be a constitutional violation if a witness took the stand for cross-examination and then refused to answer *any* questions at all. That situation would be more analogous to that of a witness who invokes the privilege against self-incrimination—but it is not what happened here. See *Owens*, 484 U.S. at 561–62 (noting that

witness's assertion of privilege might impermissibly undermine cross-examination but that the same effect "is not produced by the witness' assertion of memory loss—which … is often the very result sought to be produced by cross-examination, and can be effective in destroying the force of the prior statement"). Fulton responded to a number of questions about her memory loss, and Shaffers' counsel had the opportunity to probe her explanation and attack her credibility before the jury. Under those circumstances, the admission of Fulton's grand jury testimony did not violate the Confrontation Clause.[3]

III. *Sufficiency of the Evidence*

Next, Shaffers argues that there was insufficient evidence to support his conviction under the felon-in-possession statute. In reviewing that question, "we afford great deference to a jury's verdict of conviction." *United States v. Godinez*, 7 F.4th 628, 638 (7th Cir. 2021). We will overturn a conviction only where "the record is devoid of evidence from which a reasonable jury could find guilt beyond a reasonable doubt." *Id.*, quoting *United States v. Khan*, 937 F.3d 1042, 1055 (7th Cir. 2019). And we view the evidence in the light most favorable to the government, *United States v. Wallace*, 991 F.3d 810, 812 (7th Cir. 2021), which means giving the government the benefit of conflicts in the evidence and reasonable inferences from the evidence. While we have said that this standard poses a significant hurdle for a defendant, we have also made clear that "the height of the hurdle depends directly on the strength of the government's evidence." *United States v. Moreno*, 922

---

[3] Because we find no Confrontation Clause violation, we do not address the government's argument that any such violation was harmless.

F.3d 787, 793 (7th Cir. 2019), quoting *United States v. Garcia*, 919 F.3d 489, 496–97 (7th Cir. 2019).

To convict Shaffers, the government needed to prove that (1) he had been convicted of a crime punishable by more than one year in prison, (2) he knowingly possessed the gun, (3) he knew he was in a category of persons barred from possessing a gun, and (4) the gun had traveled in or affected interstate or foreign commerce. See 18 U.S.C. § 922(g)(1); *United States v. Perryman*, — F.4th —, —, 2021 WL 5937729, at *4 (7th Cir. Dec. 16, 2021). See generally *Rehaif v. United States*, 139 S. Ct. 2191 (2019) (holding that knowledge of status is element under § 922(g)). Only the second element—possession—is disputed here.

The government did not present any physical proof that Shaffers possessed the gun, relying instead on a theory of constructive possession. To prove constructive possession, the government had to show a "nexus" connecting Shaffers to the gun. *United States v. Davis*, 896 F.3d 784, 790 (7th Cir. 2018). Such a nexus is typically established in one of two ways. First, if the defendant had exclusive control over the property where the gun was found, then "a jury may reasonably infer that he constructively possessed the items, including the contraband, found on that property." *United States v. Griffin*, 684 F.3d 691, 695 (7th Cir. 2012). In the absence of exclusive control, however, the government can also establish constructive possession by showing that the defendant had "a 'substantial connection' to the location where the [gun] was found." *Davis*, 896 F.3d at 790, quoting *Griffin*, 684 F.3d at 695.

Shaffers argues that the government failed to establish a sufficient nexus linking him to the gun, pointing out that three other people were in the car. It is true that mere proximity to

contraband is not enough to establish a nexus. *Davis*, 896 F.3d at 790. We have also concluded, however, that "proximity coupled with evidence of some other factor—including connection with [an impermissible item], proof of motive, a gesture implying control, evasive conduct, or a statement indicating involvement in an enterprise is enough to sustain a guilty verdict." *Id.* (alteration in original), quoting *Griffin*, 684 F.3d at 696.

At least two such factors were present here. First, viewing the evidence in the light most favorable to the government, Shaffers was hunched over and making furtive movements with his hands near the floorboard as the officers approached the car. Officer Streeper testified that he thought Shaffers "was trying to conceal contraband or a weapon." Moments later, Officer Streeper recovered the gun from the driver's side floorboard, the same place where Shaffers had been making furtive movements with his hands. The jury could reasonably conclude that Shaffers had been trying to conceal the gun.[4]

Second, Shaffers fled from the officers. In *Griffin*, another felon-in-possession case, we reiterated that mere proximity to contraband is not a sufficient nexus but recognized that "a defendant's flight … is sufficient to overcome the mere-presence principle." 684 F.3d at 697; accord, e.g., *United States v. Morris*, 576 F.3d 661, 668 (7th Cir. 2009) ("We have previously identified a defendant's flight as the 'something more' sufficient to

---

[4] Shaffers argues that none of the categories of evidence we viewed as sufficient to sustain a felon-in-possession conviction in *United States v. Chairez* are present here, but in that case we specifically noted that the government "presented no evidence that Chairez … made a gesture towards the gun." 33 F.3d 823, 825 (7th Cir. 1994). Here, according to Officer Streeper's testimony, Shaffers did just that.

overcome the mere presence doctrine."), citing *United States v. Starks*, 309 F.3d 1017, 1025 (7th Cir. 2002). In response, Shaffers insists that he fled because he feared trouble for driving on a revoked license. That assertion presented a question for the jury. It was not unreasonable for the jury to reject that explanation and to conclude instead that Shaffers fled because he knew the police would discover the gun.

In addition to the furtive movements and flight, Shaffers lied to law enforcement officials after his arrest and attempted to influence witness testimony before trial. According to the ATF agent who conducted the post-arrest interview, Shaffers said that he was at home on the night in question. On cross-examination, Shaffers admitted that he had lied. Furthermore, the jury heard audio recordings of telephone calls that Shaffers made after his arrest to Fulton and to Paris Madlock, the mother of his child. Madlock testified that Shaffers wanted to pay witnesses to say he had not been present on the night in question. This evidence further supported the jury's finding that Shaffers possessed the gun. See *Davis*, 896 F.3d at 791 (relying in part on defendant's attempt to influence witness testimony in finding sufficient evidence to support constructive possession). The evidence was sufficient to support Shaffers' conviction.

IV. *Sentencing*

Finally, Shaffers challenges his sentence on the ground that the district court improperly treated his prior aggravated assault conviction as a "crime of violence" under the Sentencing Guidelines. We review de novo that issue of law. *United States v. Williams*, 949 F.3d 1056, 1066 (7th Cir. 2020).

A.  *Sentencing Proceedings*

Under the Sentencing Guidelines, the base offense level for a person convicted under 18 U.S.C. § 922(g)(1) depends in part on whether he has any prior convictions for "crimes of violence." U.S.S.G. § 2K2.1(a). That term is defined by reference to another section of the Guidelines, which states that a crime of violence is:

> any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

§ 4B1.2(a). We conclude that the district court correctly classified the prior conviction as a crime of violence under the elements clause in § 4B1.2(a)(1). We need not decide whether it would also be a crime of violence under the enumerated offenses clause in § 4B1.2(a)(2). See *United States v. Carter*, 961 F.3d 953, 957 (7th Cir. 2020) (taking same approach in analyzing Iowa aggravated assault statute).

The parties agree that Shaffers' 2012 conviction for aggravated discharge of a firearm qualified as a crime of violence. The dispute is over Shaffers' 2008 conviction for aggravated assault. If it counts as a crime of violence, his base offense

level is 26; if it does not, his base offense level would be only 22. The district court found that the aggravated assault conviction qualified.

B.  *The Categorical Approach*

To determine whether a prior offense is a crime of violence under the applicable version of the Guidelines, we apply the now-familiar categorical approach. *United States v. Vesey*, 966 F.3d 694, 696–97 (7th Cir. 2020). We focus not on the actual facts of the prior case but on the elements in the statute of conviction to determine whether they match the guideline definition of a crime of violence. *Id.* at 697. "If the state law defines an offense more broadly than the Guidelines, the prior conviction does not qualify as a crime of violence; if the state-law elements match up with or are narrower than the Guidelines, however, then the prior conviction qualifies." *Carter*, 961 F.3d at 956.

The analysis requires another step if the statute of conviction contains multiple parts. Some statutes include multiple offenses with their own sets of elements, while others include multiple "means" of satisfying specific elements. Statutes that fall into the first category are "divisible," meaning that the sentencing court must determine which one of the multiple offenses was committed. *Carter*, 961 F.3d at 956. Accordingly, the court may look to "a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." *Vesey*, 966 F.3d at 697, quoting *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016). After considering those materials—known as *Shepard* documents—the court compares the crime of conviction to the guideline definition to determine whether the prior offense is a crime of

violence. See *Mathis*, 136 S. Ct. at 2249; see also *Shepard v. United States*, 544 U.S. 13, 26 (2005).[5]

C.  *Shaffers' Prior Conviction*

Shaffers pleaded guilty to aggravated assault in 2008. At the time, Illinois law provided: "A person commits an aggravated assault when, in committing an assault, he … [k]nows the individual assaulted to be a peace officer … engaged in the execution of any of his official duties." 720 ILCS 5/12-2(a)(6) (2008).[6] The term "assault" was defined in a separate provision as engaging "in conduct which places another in reasonable apprehension of receiving a battery." 720 ILCS 5/12-1(a) (2008). And in turn the definition of "battery" appeared in yet another provision: "A person commits battery if he intentionally or knowingly without legal justification and by any means, (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual." 720 ILCS 5/12-3(a) (2008).

We have previously held that the Illinois battery statute is divisible. *Vesey*, 966 F.3d at 697. A conviction under the first clause—for causing bodily harm—has as an element "the use, attempted use, or threatened use of force" and thus is a crime of violence, while a conviction under the second clause does

---

[5] In 2018, the Sentencing Commission proposed amendments to the Guidelines that would forgo rigid adherence to the categorical method and instead allow a court to consider the conduct that formed the basis of the defendant's prior conviction. Sentencing Guidelines for United States Courts, 83 Fed. Reg. 65400, 65407–11 (Dec. 20, 2018). As we have noted before, however, the Commission has been unable to follow through on that proposal because it has lacked a quorum for years. *Bridges v. United States*, 991 F.3d 793, 798 (7th Cir. 2021).

[6] The relevant language now appears in 720 ILCS 5/12-2(b)(4.1).

not. *Id.*; see also *United States v. Montez*, 858 F.3d 1085, 1092 (7th Cir. 2017). The district court here turned to the *Shepard* documents to determine which prong of the battery statute formed the basis of Shaffers' 2008 conviction. The court acknowledged that it was permitted "to look at a limited universe of documents to determine not how the offense was committed but … which prong of the statute is involved here." From the plea colloquy, the court concluded that Shaffers' conviction was based on the first prong of the battery statute because the charging language—which the sentencing court had read into the record at the time of the plea—stated that Shaffers had pointed a firearm in the direction of police officers. As a result, the court found that Shaffers' prior conviction qualified as a crime of violence and calculated his base offense level accordingly.

Shaffers argues that the district court erred in two ways. First, he contends that the court should not have analyzed the elements of the battery statute because it was not the statute of conviction. Second, he asserts that the district court should not have considered the fact that he pointed a gun at the officers because the categorical approach forbids such inquiry into the facts underlying the conviction.

Both arguments are foreclosed by our decision in *Vesey*. The defendant in that case, like Shaffers, had a prior conviction under the Illinois aggravated assault statute. *Vesey*, 966 F.3d at 695. Because that statute incorporates the divisible Illinois battery statute, the district court looked to the *Shepard* documents to ascertain which prong of the battery statute supported Vesey's conviction. *Id.* at 697–98. Those documents showed that Vesey had swung a shower rod at a correctional officer, so the court concluded that he had been convicted

under the first prong of the statute and therefore classified the conviction as a crime of violence. We affirmed.

That's the same process the district court followed here. First, the court correctly recognized that the Illinois battery statute is divisible. It is true, as Shaffers points out, that *Mathis* instructs the sentencing court to focus on "the elements of the crime of conviction," 136 S. Ct. at 2248, and that the crime of conviction here was aggravated assault—not battery. But where the crime of conviction incorporates the definition of another crime—as the Illinois aggravated assault statute does—we have often recognized that the sentencing court may need to evaluate whether that other statute is divisible. See *Vesey*, 966 F.3d at 697–98; *Carter*, 961 F.3d at 957 (applying modified categorical approach for aggravated assault conviction because underlying assault statute was divisible); *United States v. Lynn*, 851 F.3d 786, 796–97 (7th Cir. 2017) (applying modified categorical approach for aggravated battery conviction because underlying battery statute was divisible). If the district court had not analyzed the elements of the battery statute, it would not have had a complete picture of the elements the state needed to prove to convict Shaffers of aggravated assault. *Mathis* did not impose such an illogical constraint on sentencing courts.

Nor did the district court err by considering the *Shepard* documents after determining that the Illinois battery statute was divisible. *Mathis* held that the sentencing court may look to materials such as the plea agreement and colloquy "to determine what crime, with what elements, a defendant was convicted of." 136 S. Ct. at 2249. That is precisely what the district court did here. Based on the plea colloquy, the court concluded that Shaffers' aggravated assault conviction

involved the first prong of the battery statute—fear of causing bodily harm—because he had pointed a gun at the officers. As in *Vesey*, the district court was permitted to look to the *Shepard* documents "to determine which prong of the battery statute formed the basis of the defendant's conviction." 966 F.3d at 698 (emphasis omitted); see also *Carter*, 961 F.3d at 957 (consulting *Shepard* documents where Iowa aggravated assault statute incorporated definition of assault and assault statute itself was divisible); *Lynn*, 851 F.3d at 796–97 (consulting *Shepard* documents where Illinois aggravated battery statute incorporated definition of battery and battery statute itself was divisible). The classification of Shaffers' aggravated assault conviction as a crime of violence was legally correct.

AFFIRMED.