In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 24-1369

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JORGE DIAZ,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:18-cr-00634-1 — **Sharon Johnson Coleman**, *Judge.*

———————————

ARGUED APRIL 15, 2025 — DECIDED AUGUST 13, 2025

———————————

Before EASTERBROOK, KOLAR, and MALDONADO, *Circuit Judges.*

MALDONADO, *Circuit Judge.* Jorge Diaz was convicted of two related federal drug-trafficking crimes. In this appeal, he asserts that several constitutional and evidentiary errors in his trial require reversal. Finding none meritorious, we affirm.

**I**

On March 22, 2021, Jorge Diaz was charged in a two-count superseding indictment. The first count charged Diaz with conspiracy to possess five kilograms or more of cocaine with intent to distribute from August 2016 to December 2016. The second count charged Diaz with attempted possession of five kilograms or more of cocaine with intent to distribute on December 15, 2016. A jury convicted Diaz on both counts in July 2023.

At trial, the government called Maria Bonilla, a cooperating witness, to the stand. Bonilla had assisted in the investigation leading to Diaz's arrest, and she testified against him before the grand jury. She testified that she had been arrested in 2016 for drug-trafficking and began cooperating with the government to avoid charges. Bonilla identified Diaz in a photo as a drug-trafficking associate she knew as "Carlos," whom she had met on both December 6 and December 15, 2016. She further testified that on December 6, she met "Carlos" in a Calumet City, Illinois parking lot to pick up a large quantity of cash, and that she recorded both their phone call arranging the meeting and the meeting itself. She met "Carlos" in the same parking lot on December 15 and gave him a red bag containing 15 kilograms of cocaine. She also recorded this meeting.

But Bonilla's testimony changed radically at trial. When Bonilla took the stand, she answered a few background questions about where she grew up, currently lived, and her past employment. But she purported to have no recollection of participating in drug trafficking or cooperating with the government. She testified that she did not recall transporting drugs or money in 2016; being arrested by law enforcement;

cooperating with law enforcement afterwards; or meeting in person with drug-trafficking associates like Diaz at law enforcement's direction. She even denied any memory of testifying against Diaz before the grand jury, even when the government attempted to refresh her recollection with a transcript of her testimony.

In response, the government moved to introduce Bonilla's grand jury testimony as a prior inconsistent statement made under oath pursuant to Federal Rule of Evidence 801(d)(1)(A). Diaz objected to presenting any of Bonilla's grand jury testimony to the jury on Confrontation Clause grounds, which the court overruled. On cross-examination, defense counsel probed Bonilla's lack of memory and obtained several admissions, including that Bonilla had a tattoo of the "patron saint" of narcotics trafficking.

The district court also permitted the government to introduce the audio recordings of Bonilla's meetings on December 6 and December 15, 2016. These were introduced via the testimony of DEA Agent Hugo Alarcon, who had supervised both meetings and arrested Diaz after the second. Agent Alarcon testified that, after the arrest, he had several conversations with Diaz and testified that it was Diaz's voice captured on the Bonilla recordings. On that basis, the district court permitted the recordings to be played for the jury, finding that the government had laid a sufficient foundation pursuant to Federal Rule of Evidence 901(a).

The jury convicted Diaz on both charges. This appeal followed.

## II

Diaz argues the district court erred in three respects. First, he argues that the district court's admission of Bonilla's grand jury testimony as substantive evidence violated his Sixth Amendment right to confront the witnesses against him. Second, he argues that the district court erred in admitting Bonilla's audio recordings without establishing a proper foundation for their veracity. Third, he argues—for the first time on appeal—that Agent Alarcon's voice identification was unduly suggestive in violation of his due process rights. All three arguments fail.

## A.

We review de novo whether the admission of Bonilla's grand jury testimony as substantive evidence violated the Confrontation Clause. *United States v. Shaffers*, 22 F.4th 655, 659 (7th Cir. 2022).

The Sixth Amendment provides that a criminal defendant "shall enjoy the right … to be confronted with the witnesses against him." U.S. CONST. amend. VI. This includes "the right of cross-examination." *Douglas v. Alabama*, 380 U.S. 415, 418 (1965). But it does not "guarantee that every witness called by the prosecution will refrain from giving testimony that is marred by forgetfulness, confusion, or evasion." *United States v. Owens*, 484 U.S. 554, 558 (1988) (internal quotation marks and citation omitted). Rather, the Confrontation Clause guarantees only "an *opportunity* for effective cross-examination." *Id.* at 559 (internal quotation marks and citation omitted).

The Supreme Court's decision in *Owens* frames our analysis. There, the Court upheld the admission of testimony of a witness who, on direct examination, remembered identifying

the defendant as the assailant contemporaneous to his assault, but then on cross-examination, could not remember seeing his assailant. *Id*. at 556–57. The Court explained that, when a witness cannot recall, there is no constitutional violation because "a defendant seeking to discredit a forgetful … witness is not without ammunition, since the jury may be persuaded that [the witness] is as unreliable as [their] memory." *Id*. at 558 (citation modified). Just as in *Owens*, it is sufficient that Diaz had "the opportunity to bring out such matters as … the very fact that [Bonilla] has a bad memory." *Id.* at 559.

Diaz fails to distinguish his case from any of our controlling precedents interpreting *Owens* in the context of grand jury testimony. In *United States v. Shaffers*, we held that, in a prosecution for felon in possession of a firearm, a witness's grand jury testimony identifying the defendant as holding a gun could be admitted as a prior inconsistent statement when the witness later claimed a lack of memory at trial. 22 F.4th at 660–61. We explained that there was no Confrontation Clause violation because, just like Bonilla, the witness had appeared at trial and "responded to a number of questions about her memory loss, and [defense] counsel had the opportunity to probe her explanation and attack her credibility before the jury." *Id*. at 662–63; *see also United States v. Thomas*, 794 F.3d 705, 709 (7th Cir. 2015) (holding that the district court erred in denying the admission of the prior inconsistent statements from the witness' grand jury testimony "because grand jury testimony is admissible as evidence when the witness has no recollection of it"); *United States v. Coooper*, 767 F.3d 721, 728 (7th Cir. 2014) (upholding admission of grand jury testimony of a witness who "denied any knowledge of the facts at issue and claimed she could not recall her prior statements to the

grand jury"). We see no daylight between these precedents and the present case.

Said differently, compliance with Federal Rule of Evidence 801(d) avoids any Confrontation Clause issue. Rule 801(d)(1)(A) classifies a declarant's prior statement as "not hearsay" if (1) the "declarant testifies and is subject to cross-examination about [the] prior statement," and (2) the statement is both "inconsistent with the declarant's testimony and was given under penalty of perjury." FED. R. EVID. 801(d)(1)(A). A witness is "subject to cross-examination" as required by Rule 801(d) "when he is placed on the stand, under oath, and responds willingly to questions." *Owens*, 484 U.S. at 561. No unconstitutional effect is "produced by the witness' assertion of memory loss—which … can be effective in destroying the force of the prior statement." *Id*. at 562. Here, there is no dispute that the requirements of Rule 801(d)(1)(A) were satisfied.

There is no dispute that Diaz cross-examined Bonilla. We therefore hold that the admission of Bonilla's prior grand jury testimony did not violate Diaz's rights under the Sixth Amendment.

**B.**

Next, Diaz argues that the district court erred by permitting the Government to play the two recordings absent sufficient foundation as required under Federal Rule of Evidence 901. We review a district court's rulings on evidentiary foundation for abuse of discretion. *United States v. Davis*, 845 F.3d 282, 286 (7th Cir. 2016).

Federal Rule of Evidence 901(a) provides that to "satisfy the requirement of authenticating or identifying an item of

evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Rule 901(b) offers examples of the sort of "evidence that satisfies" Rule 901(a). A voice identification, for example, can be authenticated by "[a]n opinion identifying a person's voice—whether heard firsthand or through mechanical or electronic transmission or recording—based on hearing the voice at any time under circumstances that connect it with the alleged speaker." FED. R. EVID. 901(b)(5).

At the outset, the Government bears an initial—though minimal—burden to get voice recordings before a jury by showing that "the recordings are true, accurate and authentic recording[s] of the conversation[s], at given time[s], between the parties involved." *United States v. Keck*, 773 F.2d 759, 766 (7th Cir. 1985) (citation modified). But Diaz acknowledges, as he must, that our precedents require that the identifying witness have only "minimal familiarity with the voice." *United States v. Trent*, 863 F.3d 699, 707 (7th Cir. 2017) (citation modified).

In describing the minimal familiarity requirement, Diaz implies that it requires a significant showing by the Government. But this understanding is close to the opposite of the test. Rather, "[m]inimal familiarity is not a high bar." *Id.* at 707 (gathering cases). We have said, for example, that "hearing a voice only once during a court proceeding is sufficient." *Id*. We have even held that "a witness who had heard a voice in a recorded phone conversation could later identify that voice as the defendant's after speaking with the defendant during his arrest and post-arrest interview." *Id*. (citing *United States v. Recendiz*, 557 F.3d 511, 527 (7th Cir. 2009)).

That is exactly what happened here. At trial, Agent Alarcon testified that he recognized Diaz's voice in the December 6 recordings of the phone call and in-person meeting and recognized it in the December 15 recorded phone call. Agent Alarcon explained that he was able to identify Diaz's voice based on personally speaking with him for approximately 10 minutes after Diaz's December 15, 2016, arrest. The transcript shows that during that time, Agent Alarcon asked Diaz various biographical questions, all of which Diaz answered freely. Furthermore, Agent Alarcon testified that he, like Diaz, is a native Spanish speaker, and their post-arrest conversation took place in Spanish.

We have regularly found the minimum familiarity requirement satisfied on far slimmer evidence than this. For instance, in *United States v. Mansoori*, we held that a "brief opportunity" to hear a voice during a single court proceeding satisfied minimal familiarity such that "[t]he accuracy of [the] identification" is not presumed but simply remains the territory of the jury. 304 F.3d 635, 665 (7th Cir. 2002). And in *United States v. Jones*, we held that a voice identification was based on sufficient minimal familiarity where the detective never personally spoke with the defendant, but on four or five occasions heard the defendant speak as little as two to three sentences each time. 600 F.3d 847, 857–58 (7th Cir. 2010). With that minimal threshold satisfied, the truth of the identification "go[es] to the weight of the evidence, and [therefore] the issue is for the jury to decide." *Id*. at 858 (citation modified).

The same conclusion applies here. The government established that Agent Alarcon had minimum familiarity with Diaz's voice. The truth of whether the recordings were indeed of Diaz was thus a question for the jury. We therefore hold

that the district court did not abuse its discretion in finding sufficient foundation to admit the audio recordings under Federal Rule of Evidence 901.

### C.

Finally, Diaz argues that Agent Alarcon's voice identification was unduly suggestive in violation of his due process rights.

As a threshold matter, Diaz never challenged the reliability of the voice identification on due process grounds below, instead he challenged the admission of the recordings only on authenticity and foundation grounds. *See* Tr. 43 ("[I]n light of the testimony of the agent … we still would be objecting to [the recordings] authenticat[ion] and foundation-wise"); R. 143 (post-trial motion arguing that Agent Alarcon's testimony was insufficient to authenticate the recordings). This argument is therefore forfeited. *United States v. Beltran-Leon*, 9 F.4th 485, 498 (7th Cir. 2021) ("[A] criminal defendant hoping to preserve an issue for appeal must make a timely and specific objection in the district court." (citation omitted)).

Assuming that the reliability objection was merely forfeited rather than waived, we review for plain error. *Id.* To reverse under this standard, "(1) there must be an error; (2) the error must be plain; and (3) the error must affect substantial rights, which generally means that there must be a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *United States v. Page*, 123 F.4th 851, 864 (7th Cir. 2024) (citation modified).

Diaz fails at the first step: the admission of the identification was not in error because it did not violate the Due Process Clause. A witness's voice identification is subject to the same

due process analysis as other forms of identification, and "reliability is the linchpin." *Recendiz*, 557 F.3d at 528 (citation modified). To determine whether an identification procedure violated a defendant's constitutional rights, we consider whether the process was "unduly suggestive," and even if so, whether it was "sufficiently reliable to prevent a very substantial likelihood of irreparable misidentification." *Id*. at 525 (citation modified). The same factors that apply to other identifications are applicable to assess the reliability of voice identifications: (1) the opportunity of the witness to hear the criminal act prior to the identification, (2) the witness's degree of attention during such an opportunity, (3) the accuracy of the witness's prior description of the criminal, if he made one, (4) the level of certainty demonstrated at the time of the identification, and (5) the time between the crime and the identification. *Id*. (citing *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977) and *Neil v. Biggers*, 409 U.S. 188, 199–200 (1972)).

These factors point conclusively in the government's favor. First, as in *Recendiz*, Agent Alarcon "heard [Diaz's] voice in person on the day of his arrest, and he also had a clear opportunity to listen to the voice" on a recorded call. 557 F.3d at 528. As to the second factor, Agent Alarcon, a native Spanish speaker, reviewed the recordings—and interviewed the defendant—in Spanish, and these sessions occurred in the course of his work as an agent for an international narcotics investigation, where attention to detail matters a great deal. *See United States v. Gallo-Moreno*, 584 F.3d 751, 758 (7th Cir. 2009) (explaining that the agent's "status as a DEA agent bolsters our conclusion about his degree of attention"). Third, because Agent Alarcon's acquaintance with Diaz's voice "came from a recording of the telephone call, the accuracy of the voice is clear." *Recendiz*, 557 F.3d at 528. As to the fourth

factor, Agent Alarcon testified that he was "very confident" that the voice on the December 6, 2016, recording was Diaz's. Tr. 144; *see Gallo-Moreno*, 584 F.3d at 758 (discussing agent's expression of certainty about voice identification). Regarding the fifth factor, the record is silent as to exactly when Agent Alarcon reviewed the recordings in relation to defendant's December 15, 2016 arrest. The timeline, however, demonstrates that just nine days passed between the December 6 phone call and defendant's December 15 arrest, and Agent Alarcon testified that he listened to the December 6 recording both in real-time, and then again later, after processing and downloading the recording.

In sum, Agent Alarcon's voice identification testimony easily passes the test for constitutional reliability, and indeed, is akin to other circumstances in which we have upheld the reliability of voice identifications. *See, e.g.*, *Gallo-Moreno*, 584 F.3d at 754 (rejecting due process challenge to a voice identification made by an agent who had listened to multiple recordings of defendant's voice and then engaged in a "casual conversation" with defendant to identify his voice); *Recendiz*, 557 F.3d at 527–28 (agent's identification of a defendant's voice on a wiretap was reliable, even where the agent knew the defendant would soon be arrested and spoke with the defendant for the sole purpose of making a voice identification).

We therefore hold that the district court did not plainly err in concluding that Agent Alarcon's identification of Diaz's voice was neither unconstitutionally suggestive nor unreliable in violation of Diaz's rights under the Due Process Clause.

* * *

Accordingly, we AFFIRM the judgment of the district court.